# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

No. 08-4039

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | Appeal from the United |
| | ) | States District Court for |
| vs. | ) | Northern District of |
| | ) | Illinois, Eastern Division |
| ADAM RESNICK | ) | |
| _____ | ) | No. 05 CR 9 |
| | ) | |
| UNITED STATES of AMERICA, | ) | Hon. Wayne R. Andersen, |
| | ) | District Judge, Presiding |
| Petitioner-Appellee. | ) | |
| vs. | ) | |
| | ) | |
| DOMENIC POETA | ) | |
| | ) | |
| Respondent- Appellant | ) | |

## BRIEF AND REQUIRED SHORT APPENDIX FOR RESPONDENT-APPELLANT

### ORAL ARGUMENT REQUESTED

ERIC S. PALLES
Ravitz & Palles, P.C.
203 North LaSalle Street, Suite 2100
Chicago, Illinois 60601
(312) 558-1689

Counsel for Respondent-Appellant

## CIRCUIT RULE 26.1  DISCLOSURE STATEMENT

Appellate Court No.  08-4039

Short Caption: United States v. Adam Resnick

(1)      The full name of every party that the attorney represents in the case:

Domenic Poeta

(2)      The names of all law firms whose partners or associates have appeared for a party in the case or are expected to appear for the party in this court:

Ravitz & Palles, P.C.

(3)      If the party or amicus is a corporation:

(i)      Identify all its parents corporations, if any; and

Not Applicable

(ii)      list any publicly held corporation that owns 100% or more of the party's or amicus stock:

Not Applicable


Attorney Signature: _____          Date:_____

Attorney's Printed Name: Eric S. Palles


Please indicate if you are Counsel of record for the above listed parties pursuant to Circuit Rule 3(d):

Yes _____          No _____


Address: 203 N. LaSalle, Street, Ste. 2100, Chicago, IL 60601
Phone Number: 312-558-1689
Fax Number:   773-252-2590
E-Mail: epalles@ravitzpalles.com

- i -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT

    I.    The Court Erred When, after Finding as a Matter of Fact, That the Monies Paid to Resnick Were Not Resnick's Property, it Nonetheless Concluded as a Matter of Law That this Fact Was Irrelevant. . . . . . . . 9

    A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    The Means of Enforcement, a State Supplementary Proceeding, Depended upon the Fact that the Proceeding Involved Assets of the Debtor. In the Absence of Such a Finding, Poeta was Entitled to the Full Panoply of Procedures Afforded by a Federal Civil Trial, Including Trial by Jury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    II.    The Court Erred When it Failed to Make Factual Findings upon Which There was Substantial and Uncontroverted Evidence and Which Implicated the Parties Respective Liabilities and the Measure of Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.    The Trial Court Ignored Substantial Evidence that Universal Bank Contributed to its Own Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

C.      The Trial Court Ignored Evidence that Poeta Gave Offsetting Funds to
        Resnick . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21


RULE 30(d), 31(e), AND 32(a)(7)(C) CERTIFICATIONS  . . . . . . . . . . . . . . . . .  22

APPENDICES

        Table of Contents for Required Short Appendix . . . . . . . . . . . . . . . . . . . . . post

        ITEM A:     Findings of Fact and Conclusions of Law on
                    the Petition for Relief Against Domenic Poeta

        ITEM B:     Court's Order Ruling Denying Motion to
                    Alter or Amend Judgment Or, Alternatively,
                    for New Trial

        ITEM C:     Transcript of Proceedings, July 23, 2008

        ITEM D:     Poeta Trial Exhibit 1

        ITEM E:     Poeta Trial Exhibit 5

        ITEM F      Excerpts from Government Exhibit D to
                    Amended Motion for Judgment on the Pleadings

        ITEM G:     Poeta Trial Exhibit 10

-iii-

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Burns Philp Food, Inc. v. Cavalea Continental Freight, Inc.*, 135 F.3d 526 (7th Cir. 1998) . . . . . . . . . 16, 19

*Culligan Rock River Water Conditioning Co. v. Gearhart*, 111 Ill. App. 3d 254, 443 N.E.2d 1065 (1982)  18

*Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008) . . . . . .  9, 16

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340,  118 S. Ct. 1279, 140 L. Ed. 2d 438 (1998)   16

*Garvey v. Parrish*, 84 Ill. App. 3d 578, 405 N.E.2d 1105 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Griffin v. City of Omaha*, 785 F.2d 620 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*HPI Health Care Services, Inc. v. Mt. Vernon Hospital*, Inc., 131 Ill. 2d 145, 545 N.E.2d 672 (1989) . .  16

*Independent Enterprises, Inc. v Pittsburgh Water & Sewer Authority*, 103 F.3d 1165 (3d Cir. 1997)  . . . .  12

*Kaibab Industries, Inc. v. Family Ready Homes, Inc.*,111 Ill. App. 3d 965, 969-71, 444 N.E.2d 1119
(1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 14

*Kidd v Illinois State Police*, 167 F.3d 1084 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Meggison v. Stevens*, 21 Ill. App. 3d 505, 316 N.E.2d 297 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Mid- America Bank v. Charter One Bank*,  232 Ill. 2d 560, 905 N.E.2d 839 (2009). . . . . . . . . . . . . . .  14

*Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 807 N.E.2d 439 (2004) . . . . . . . . . . . . .  19

*Regan v. Ivanelli*, 246 Ill. App. 3d 798, 617 N.E.2d 808 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Resolution Trust Corp. v. Ruggerio*, 994 F. 2d 1221 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Santos v. United States*, 461 F.3d 886 (7th Cir. 2006), *aff'd* ____ U.S. ____, 128 S. Ct. 2020, 170 L. Ed.
2d 912 (June 2, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*TRW Title Insurance Co. v. Security Union Title Insurance Co.*, 153 F.3d 822 (7th Cir. 1998) . . . . . . . . .  18

*United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Velasquez v. City of Abilene*, 725 F.2d 1017 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Constitutional Provisions

U.S. Const. Amend. VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Statutory Provisions

28 U.S.C. §3301, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. §3305(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

735 ILCS 5/2-1402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

735 ILCS 5/12-711(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rules

Fed R. Civ. P. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed R. Civ. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed R. Civ. P. 30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed R. Civ. P. 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed R. Civ. P. 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed R. Civ. P. 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed R. Civ. P. 69 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## **JURISDICTIONAL STATEMENT**

The jurisdiction of the district court was predicated upon 28 U.S.C. §1331. The

jurisdiction of the Court of Appeals is predicated upon 28 U.S.C. §1291. On

September 29, 2008, the district court entered an order granting judgment in favor of

the judgment creditor, United States of America, and against the citation respondent,

Domenic Poeta. On October 9, 2008, Poeta filed a motion under Fed. R. Civ. P. 59

to alter or amend the judgment, and for a new trial. On October 30, 2008, the district

court denied the motion. The notice of appeal was filed on November 24, 2008.

## **ISSUES PRESENTED FOR REVIEW**

Whether, after finding as a matter of fact that the monies Poeta received were

not Adam Resnick's, the trial court erred as a matter of law in concluding this finding

was irrelevant to disposition of the government's request for relief.

Whether, as a result, Poeta was denied due process of law and his seventh

amendment right to jury and is, therefore, entitled to a new trial.

Whether the court erred when it failed to make factual findings upon which

there was substantial and uncontroverted evidence and which implicated a)the parties

respective liabilities, and b) the measure of damages

1

**STATEMENT OF THE CASE**

Against the background of enforcing a criminal restitution judgment against co-defendant Adam Resnick, the government issued a citation to discover assets against third-party citation-respondent Domenic Poeta under Rule 69 of the Federal Rules of Civil Procedure, which incorporates state collection procedures under Ill. S. Ct. Rule 277 and 735 ILCS 5/2-1402. After Poeta invoked his Fifth Amendment rights during the proceeding, the government filed a "petition for relief." Poeta answered and the government filed a motion for judgment on the pleadings. The court heard evidence on the motion and entered judgment in favor of the government in the amount requested, together with prejudgment interest.

**STATEMENT OF FACTS**

.       In January 2005, the government charged that Adam Resnick, and his codefendants, Terrence ("Terry") and Antoinette ("Toni") Navarro, engaged in a check-kiting scheme from December 2001 to June 2002 by manipulating account balances at Universal Federal Savings Bank ("Universal Bank"), where Toni was chief operating officer, and at American National Bank, where Universal Bank had a correspondent account. Court's Findings of Fact and Conclusions of Law ("Findings") Appx. Item A (Dkt. 155)  ¶1. In January 2007, Resnick entered into a plea deal,  pleaded guilty to a single count of wire fraud, and became a cooperating witness in return for a reduced sentence. Dkt. 62. In  addition to being sentenced to a

2

term of imprisonment, Resnick was ordered to pay in excess of $10.4 million in restitution. Dkt. 81; Findings ¶4.

Resnick gambled away most of this money. Findings ¶2.  He claimed some of this money was lost to Domenic Poeta, a third-party whom Resnick identified as his "bookie," and that certain cashier's checks and bank checks made to Poeta or to "Cash" were to satisfy illegal gambling debts. Dkt. 99 ¶¶15-16.  Under the criminal caption, the United States initiated a citation to discover assets against  Poeta.  Poeta appeared at the citation proceeding at the United States attorney's office, was placed under oath and asked whether he engaged in illegal activities. Dkt. 99, Exhibit 2, *passim*. Poeta asserted his fifth amendment privilege. *Id.* Whereupon the government filed its "petition for relief" in the criminal case, seeking to void the transfers to Poeta as fraudulent under the Federal Debt Collection Procedure Act, 28 U.S.C §3301 et seq.  Dkt. 99. The government ultimately claimed $647,211, plus prejudgment interest. Dkt. 124.

Poeta answered the petition and moved the trial court for discovery. Dkt. 114 The court denied Poeta's request for discovery and ordered the government to file a motion for judgment on the pleadings. Dkt. 117.  After reviewing the motion and Poeta's response,  the judge agreed to hear evidence on the motion. Dkt. 131, 137 ("Tr.")

The government's sole witness was Adam Resnick, a former healthcare entrepreneur and self-confessed compulsive gambler whose conduct led to the collapse of Unversal Savings Bank and a loss of approximately $10,000,000 to the FDIC. Tr.17-19. Resnick's exploits were detailed in a book he wrote after his arrest, entitled BUST, wherein his transactions with Poeta, identified with the pseudonym Luciano "Lucky" Petrelli, were faithfully recounted. *Id.* at 60, 93-94.

Resnick met Domenic Poeta in December 2001. Tr.21; but see Dkt.99 ¶11. He described their business relationship as one between bettor and bookmaker. *Id.* at.21-22. Poeta did not, to Resnick's knowledge, work for a gambling establishment and appeared, to Resnick, to operate his own book. *Id.* at 22-23. Poeta operated a meat market in Highwood, Illinois, which Resnick frequented to place, collect or pay bets. *Id.* at 24-25. Eventually, out of necessity, Resnick began paying Poeta through checks. *Id.* at 29. A recapitulation of the negotiable instruments prepared by the government discloses that, from December 20, 2001 through May 15, 2002, Resnick gave Poeta and Poeta negotiated a) four cashier's checks from Universal Bank, totaling $242,400; and b) twelve checks totaling $404,811 made to Poeta or to "Cash"and drawn upon the Universal Bank account ("the NEA account"), owned by Resnick's accountants (including co-defendant Terry Navarro), from which Resnick operated the check-kiting scheme. Findings ¶8. Resnick stated that this $647,211 represented, in its entirety, gambling losses to Poeta resulting from illegal sports bets.

4

Resnick described how, at a lunch in December 2001, the scheme to defraud the Universal Bank was formed. Resnick lamented to Terry Navarro and his partner, Lawrence Elisco, that his gambling addiction and history of bounced checks was such that he could not establish a banking relationship. They offered to put him as a signatory on the NEA account in exchange for doing his tax work. Resnick testified, "They wanted me to run my business, gambling, through the account and in turn get my accounting business." Tr.38, 73; Dkt. 125, Ex D("Appx. Item F") 194.[1] Terry gave Resnick blank NEA account checks, a supply that Resnick would periodically replenish, *id.* at 80-81, and sent Resnick to the bank to see his sister, Toni, the bank's COO, who was instrumental to the check kite. Resnick reiterated that he "would not clear check systems" and Toni told him not to worry. *Id.* at 195. Then, he signed a signature card completely lacking in personal data, i.e., he never provided Toni with his social security number and date of birth, nor did she ask for it. Poeta Ex. 1 (Appx. Item D); Tr. 79. Consequently, the signature card did not conform to bank protocols or to federal banking regulations governing the establishment of account ownership. *Id.* at 128-30. It couldn't in order for Resnick to further the check-kiting scheme. Later, Toni told Resnick how to cover checks and made Universal Bank

---

[1] This account is at odds with Terry's assertion in his sentencing memorandum that he "knew nothing of Resnick's heavy gambling problem." Dkt. 57 at 4. Elisco was vague on the particulars of the lunch, but traveled to Las Vegas with Resnick , where Resnick lost several hundred thousand dollars. Tr. 153-55.

funds immediately available to him. *Id.* at 41. Resnick would deposit NEA checks at

American National Bank, Universal Bank's correspondent bank, and call in the

deposit to Toni for immediate credit. *Id.* at 43-44. In January 2002, Toni covered a

deficit in excess of $1,000,000 for Resnick. In March, she covered a $250,000

shortfall. Dkt 52,.6-7. In May 2002, as the scheme began to unravel and bank

management began to ask questions about the NEA account, Terry gave Toni a letter

and financial statement for the bank which falsely represented that the NEA account

was a custodial account that NEA provided for its clients. Poeta Ex. 3; Poeta Ex. 15

(Dkt.46) at.3. On June 20, 2002, Terry and Resnick falsified copies of checks Resnick

had written on the account while Elisco sent a fax to Richard McKinlay, the bank's

chairman, falsely ascribing Resnick's use of the NEA account to legitimate business

purposes. Poeta Ex. 10 (Appx. Item G); Tr. 165.

Resnick did not always lose his bets. For example, he recited an instance, on

June 9, 2002, when Poeta paid him $2.2 million in cash.  Tr. 36, 104-05; Appx. Item

F. 219. This was not the only occasion that Resnick received from Poeta in excess of

$1,000,000 in cash through bets he placed with him. *Id.* at 105. A $70, 000.00 check

payable to Poeta  was among the deposits made to the NEA account. Poeta Ex.5

("Appx. Item E") at 4.

The defense called three witnesses. Richard McKinlay, the chairman of

Universal Bank, confirmed that the signature card was insufficient to identify Resnick

6

as a customer under federal banking regulations or to establish account ownership. Tr. 127-30, 140.

Lawrence Elisco , a former principal of NEA., had a hazy recollection of the lunch meeting at which he agreed to let Resnick use the NEA account, Tr. 154-56, and even more difficulty conceiving a legitimate purpose for which he would do so. *Id.* at 161-62. He made false representations to McKinlay at Resnick's direction and without verifying their accuracy. *Id.* at 165-66.  When Elisco left the stand, he received the trial court's rebuke: "you knew what you were doing was dishonest when you put [Resnick] on that account."  *Id.* at 168.

Maureen Navarro was, during the time of Resnick's check kite, president, chief security officer and chief compliance officer of Universal Bank. Tr. 17. Terry is her son and Toni, her daughter.  *Id.* at 174, 185.  Maureen Navarro knew that Resnick was using the American National Bank correspondent account for deposits to the NEA account.  *Id.* at  181 An ANB representative requested her in March 2002 to stop this use of the correspondent account. *Id.* at 184. She was also aware that Toni, a $30,000 a year employee, was driving a BMW received from Resnick. *Id.* at 186.

Taken together, the testimony of the three defense witnesses was to the effect that "access to the NEA 'account balances' were not lawful" and "supported Poeta's theory that the money stolen from Universal was not, as a legal matter,  Resnick's money." Findings ¶17.

7

Poeta did not testify at the hearing.

After hearing arguments, Dkt. 180, the trial court ruled in favor of the government for the entire amount of the claim with prejudgment interest, and directed the government to draft findings of fact and conclusions of law consistent with the ruling. Dkt. 184 ("Appx. Item C") at 6. Ultimately, over Poeta's objection, the court adopted these findings with minor change. Compare Dkt. 155 with Dkt. 147, Ex.A. Poeta's motion to amend judgment, or for a new trial, was denied. Dkt. 164

## SUMMARY OF ARGUMENTS

### I.

The evidence did not establish, nor did the trial court find, that the checks Poeta received were transfers of Resnick's property. Rather, it accepted the government's argument that ownership was irrelevant. This legal conclusion was erroneous. For one thing, the government's resort to supplementary enforcement proceedings under state law necessarily rested on the premise that Poeta was in possession of the property of the debtor, Resnick. Otherwise, resort to this summary procedure, in which Poeta was denied the panoply of rights associated with a federal civil trial, including discovery and a trial by jury, was unjustified. Secondly, even within the context of the truncated citation proceeding, the government was required to prove each element of its case and Poeta was entitled to a separate consideration

8

of the merits of each claim against him. The government's FDCPA claim depended upon a finding that the Poeta received property of the debtor. Without this finding, Poeta is entitled to judgment as a matter of law on this claim.

## II.

The government placed principal reliance upon its unpleaded claim for restitution damages under an unjust enrichment theory. However, the trial court failed to appreciate the different considerations that flowed from the fact that, for purposes of this claim, the government stood in the shoes of Universal Bank. Consequently, despite substantial and uncontroverted evidence, it failed to make pertinent factual findings concerning the existence of equitable defenses against the bank and the measure of damages.

## **ARGUMENT**

I.    **The Court Erred When, after Finding as a Matter of Fact, That the Monies Paid to Resnick Were Not Resnick's Property, but Nonetheless Concluded as a Matter of Law That this Fact Was Irrelevant.**

A.    Standard of Review

The district court's conclusions of law are reviewed *de novo. Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008).

9

B.    The Means of Enforcement, a State Supplementary Proceeding, Depended upon the Fact that the Proceeding Involved Assets of the Debtor. In the Absence of Such a Finding, Poeta was Entitled to the Full Panoply of Procedures Afforded by a Federal Civil Trial, Including Trial by Jury

Before he paused to plead guilty, Resnick had already identified Poeta as a bookie (Appx. Item E, 4) before immortalizing him, under the guise of "Lucky" Petrelli, in BUST. It remained simply for the government, in connection with the federal criminal case, to ask Poeta whether he was the "real" Petrelli. Dkt. 99, Ex.2, 20-21. When he asserted his fifth amendment rights, the government posited that this assertion entitled it to "judgment on the pleadings." Dkt. 125, 3. The trial court was, correct to insist on hearing testimony. However, the summary nature of the proceedings it conducted was deficient insofar as it precluded Poeta from taking discovery, impleading other responsible parties, and, most importantly, exercising his right to a trial by jury, as afforded by the seventh amendment of the federal constitution.

After evidence and argument, the trial court granted the government's request for relief, specifically, finding that the government had proved "Resnick was using somebody else's money and not getting anything for his estate." Appx. Item C, 3. Accordingly, he requested the government to "write up findings of fact and conclusions of law, *basing the legal conclusions on what I've just said to you.*" *Id.* at 6. (Emphasis added). Instead, he received a piece of advocacy, in which the facts were

10

truncated and the conclusions adjusted to fit the government's view of the case. Principal among these was the legal conclusion that "Poeta was paid from either Universal's money — in which case the United States can recover on a restitution theory— or Resnick's money — in which case the United States can recover on a fraudulent transfer theory.  But in either case, plumbing the precise ownership of the money used or the precise source of the money used would not change the result." Findings ¶ 37.  This was wrong, first, because the entire means of enforcement depended upon such a finding.

Fed R. Civ. P. 69 provides, in pertinent part: "The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable." In Illinois, 735 ILCS 5/2-1402 establishes a citation proceeding as a means to "discover assets or income of the debtor not exempt from the enforcement of the judgment.."

The purpose of the Illinois proceeding is to allow a judgment creditor to satisfy the judgment against identifiable property of the debtor, in his possession or in the possession of a third party. It is, in essence, an in rem proceeding. The  general assets of a citation respondent are not subject to the claim. See *Kaibab Industries, Inc. v. Family Ready Homes, Inc.*,111 Ill. App. 3d 965, 969-71, 444 N.E.2d 1119 (1983).

11

Supplementary proceedings, when appropriate, are supposed to be quick, swift and informal. *Resolution Trust Corp. v. Ruggerio*, 994 F. 2d 1221, 1226 (7th Cir. 1993). Nonetheless, under the state rules, " a civil trial" is required in cases directed against a third-party.  735 ILCS 5/2-1402(e), 12-711(c).  *Garvey v. Parrish*, 84 Ill. App. 3d 578, 582, 405 N.E.2d 1105 (1980); *Meggison v. Stevens*, 21 Ill. App. 3d 505, 316 N.E.2d 297 (1974). The trial court need not apply "every jot and tittle" of state law. *Ruggiero*, *supra*. For example, a civil trial proceeding in federal court would undoubtedly be governed by the Federal Rules of Civil Procedure. However, the summary nature of the supplementary proceedings and its connection to a criminal investigation likely caused the court to deprive  Poeta critical procedural safeguards afforded civil litigants. Some of these have a constitutional dimension, e.g, the right to trial by jury. U.S. Const.. Amend. VII. Others derive from well-established norms such as the basic principle that when a party asserts multiple, even inconsistent, claims, the opposing party is entitled to separate consideration of the merits of each. *Independent Enterprises, Inc. v Pittsburgh Water & Sewer Authority*, 103 F.3d 1165, 1175-76 (3d Cir. 1997).  Finally, some are embodied in the Federal Rules such as the exchange of discovery, (Fed. R. Civ. P. 26, 30, 33, 34) the refinement of issues for trial (Fed. R. Civ. P. 16), or the preparation of a judgment based on court findings. (Fed. R. Civ. P. 52).  Taken together or separately, they add more than a jot of fairness or a tittle of integrity to our judicial processes.

12

Regarding its obligations under Rule 52, the trial court unfortunately delegated the preparation of findings to the prevailing government, an oft-criticized practice. *Anderson v. City of Bessemer City*, 470 U.S. 564, 571-72, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985). The government seized upon the opportunity to smooth the rough edges, to ignore any evidence that contradicted its theory and to inoculate the findings from meaningful review.

> Although Rule 52 commands deference to the district court's factual findings, it does not, as the Eighth Circuit has explained, "free the district court of the burden of assuring the appellate court, through findings of fact or references in its memorandum opinion, that it has considered strongly conflicting evidence and come to grips with apparently irreconcilable conflicts."

*Kidd v Illinois State Police*, 167 F.3d 1084, 1101(7th Cir. 1999), *quoting Griffin v. City of Omaha*, 785 F.2d 620, 628 (8th Cir. 1986).

The trial court's finding was based principally the government's "restitution" theory. Resnick gambled with other people's money and Poeta did not exchange legal consideration. This finding was amply supported by the evidence in the case. Regarding the transfers from the NEA account, the evidence was that Resnick was never an employee, officer, shareholder or director of NEA. Tr. 144-48.  NEA was, at all times the  account owner and both Navarro and Elisco, the NEA principals, used the account freely. Elisco wrote himself checks totaling in excess of $280,000 during the life of the check kite. Appx. Item E,4; Poeta  Ex. 7, UN 26561, 26564,

13

26568. Terry Navarro, too, took significant funds from the NEA account, including $175,000 to Ticor Title for his benefit. Appx. Item E, 5; Poeta Ex. 8; see Poeta Ex. 9, UN 26571. Most importantly, Resnick gained access to the NEA account only through a scheme among the Navarros and him to violate established banking regulations associated with the Bank Secrecy Act and the Patriot Act.. Tr. 128-29. Any property right Resnick might claim in the account was void *ab initio.*

Any putative property rights that Resnick may have had regarding the transfer of the four cashier's checks totaling $242,400 is even more attenuated. A cashier's check is, of course, issued by a bank on its own account . The check is guaranteed by the bank and the funds are not drawn from a personal account but rather from the bank funds. Tr. 131-32. The bank is both drawer and drawee and once the check is issued, neither the bank nor the requesting customer can stop its payment. *Mid-America Bank v. Charter One Bank*, 232 Ill. 2d 560; 569-70, 905 N.E.2d 839 (2009).

The evidence indisputably "supported Poeta's theory that the money stolen from Universal was not, as a legal matter, Resnick's money." Findings ¶17. The question whether the monies were identifiable as Resnick's property was relevant. Without proof of this essential element, the remedy of a supplemental proceeding is not available and Poeta should have been entitled to a trial, initiated by a complaint

14

and proceeding as a regular civil suit. *Kaibab Industries, Inc. v. Family Ready Homes, Inc.*,111 Ill. App. 3d 965, 969, 444 N.E.2d 1119 (1983). This is the appropriate remedy for the errors committed by the judge.

A finding that the transfers to Poeta were "property of the debtor" was also an essential element of proof in connection with the government's only pleaded claim, under the Federal Debt Collection Procedures Act, 28 U.S.C. §3301, *et seq.* While section 3304 allows a court to reach back in time to void certain fraudulent transfers, "A transfer is not made until the debtor has acquired rights in the asset transferred." 28 U.S.C. §3305(4). As an Illinois court observed in connection with the analogous Uniform Fraudulent Transfer Act, upon which the federal statute is based, the only property which can be conveyed to defraud creditors is that in which the debtor has an interest. *Regan v. Ivanelli*, 246 Ill. App. 3d 798, 804, 617 N.E.2d 808 (1993).

**II.     The Court Erred When it Failed to Make Factual Findings upon Which There was Substantial and Uncontroverted Evidence and Which Implicated the Parties Respective Liabilities and the Measure of Damages**

A.     <u>Standard of Review</u>

Although the Supreme Court has criticized courts for their verbatim adoption of findings of fact prepared by prevailing parties, it has nonetheless concluded that the findings may be reversed only if clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 571-72, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985). On the other hand,

15

under Fed. R. Civ. P. 52(a), a district court is required, as a matter of law, to discuss all the substantial evidence contrary to its opinion, *Velasquez v. City of Abilene*, 725 F.2d 1017, 1020 (5th Cir. 1984), and the absence of any reference to this evidence, is *sub silentio*, a legal determination that the evidence is not relevant. The district court's conclusions of law are reviewed *de novo. Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008).

B.    The Trial Court Ignored Substantial Evidence that Universal Bank Contributed to its Own Injury

For purposes of a "restitution" theory, the government stands in the shoes of Universal Bank. See Findings ¶37. Not to be confused with the criminal restitution judgment that underlies this dispute, it is more appropriate to state that the government claims that Poeta was unjustly enriched because, simply, it has a better claim to the benefit than the defendant. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital*, Inc., 131 Ill. 2d 145, 162, 545 N.E.2d 672 (1989). "Restitution" is the measure of damages for an unjust enrichment claim. An unjust enrichment claim that seeks restitution is a legal claim. *Burns Philp Food, Inc. v. Cavalea Continental Freight, Inc.*, 135 F.3d 526, 527-28 (7th Cir. 1998) Unjust enrichment claims established actions at common law and are thus the appropriate subject of a civil complaint, and a jury trial, when directed to a non-party. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348, 118 S. Ct. 1279, 140 L. Ed. 2d 438 (1998).

16

Patently, the stakes in this case were substantial, resulting in a money judgment against Poeta of slightly less than $850,000.00, and the factual background, complex. Resnick's conduct engendered not only the captioned multi-faceted federal prosecution for conspiracy but a bank receivership and civil litigation against the FDIC in connection with Universal's misfeasance. See *Bank One, NA v. FDIC*, 03 C 3564 (N.D. Ill) (Poeta Ex. 13). However, within the confines of a summary procedure incident to a criminal case, the unjust enrichment claim was never even pleaded. No discovery was allowed, not even a limited production of documents relevant to an understanding of the case and any defenses that exist against the bank. Dkt. 115.

The universe of information that would have, and should have, been discoverable is not so limited. For example, Poeta was denied any of Resnick's statements to prosecutors or to the FBI. Evidence that Elisco misled Universal Bank (Poeta Ex. 10) was provided only by Elisco on the morning of the hearing, pursuant to subpoena. Thus, Poeta could not implead the Navarros and Elisco, who, the evidence demonstrated, were significantly more instrumental in the demise of Universal Bank than was Poeta.

There was substantial evidence that the bank's conduct contributed to its injury. Universal Bank , through Toni, its chief operating officer, willingly provided Resnick with the means to operate the check kite. Terry. Tr. 128-30, 181. Until May 2002, according to the government, Toni's "conduct as to Universal in connection

17

with Resnick and the NEA account was reckless and grossly negligent,." though not criminal.  Dkt. 52, 8. The same can be said for Maureen Navarro, Terry and Toni's mother and  the  CEO, chief security officer and compliance officer for Universal Bank. She knew that Resnick was being allowed to use Universal Bank's correspondent account at American National Bank.. Tr. 181 In fact, an ANB representative requested her in March 2002 to stop this use of the correspondent account. *Id.* at 184. The record of the prosecution amply demonstrates that she did not.

In 2002, the total funds in all of Universal Bank's checking accounts amounted to two million dollars. Tr. 133. During the six months of the check kite, Resnick ran more than $200 million of NSF checks through the NEA account. Dkt.1 at 5. These large movements of cash should have triggered suspicious activity reports and Maureen had access  to electronic images of the checks issuing from the NEA account,  Tr. 132- 133, 184-85. Nonetheless, he inquired no further, even after her daughter, a $30,000 a year employee,  arrived at work with a new BMW, booty from her conspiracy with Resnick. *Id.* at 186.

An unjust enrichment claim is denied to a plaintiff whose recklessness caused his claimed injury.  *TRW Title Insurance Co. v. Security Union Title Insurance Co.*, 153 F.3d 822, 829 (7th Cir. 1998).  Moreover, the doctrine of mitigation of damages applies  in virtually every type of case in which recovery of a money judgment or award is

18

authorized.  *Culligan Rock River Water Conditioning Co. v. Gearhart*, 111 Ill. App. 3d 254,

258, 443 N.E.2d 1065 (1982)  Poeta is entitled to a jury's consideration whether the

Bank's recovery should be barred, in whole or in part, because of its own culpable

conduct contributed to its injury. See *Burns Philp Food, Inc. v. Cavalea Continental Freight,*

*Inc.*, supra, at 527-28 (7th Cir. 1998) (restitution is a legal claim).

      C.      <u>The Trial Court Ignored Evidence that Poeta Gave Offsetting Funds to</u>
<u>Resnick</u>

Despite evidence of numerous transfers of cash from Poeta to Resnick, the

court refused, for reasons that are not apparent to consider any offset. One of these

transfers was noted by the FDIC: the deposit of a $70,000 check, payable to Poeta

deposited to the NEA account.  Appx. Item E 4.  On another occasion, Resnick

testified that he gave Toni Navarro $50,000 in cash, representing winnings from

Poeta to deposit in the NEA account. Tr. 103; Appx. Item F 210. Finally, although it

was unclear whether the funds made it into the NEA account, Resnick also described

an incident occurring in June 2002, shortly before the bank's collapse, when Poeta

gave him $2.2 million in cash. Tr. 36, 104-05; Appx. Item F 219. The court refused to

explicate why these cash payments did not constitute  equivalent value or,

alternatively, under an unjust enrichment theory, why the claim should not be

reduced thereby. Damages in unjust enrichment cases are not measured by the

plaintiff's losses, but rather the extent to which defendant's gains are unjust. See

19

*Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 257-58, 807 N.E.2d 439, 444-45 (2004).

Poeta acknowledges that, to the extent that Resnick's transfers represent payment of illegal gambling debts, they are without legal consideration and may not be enforced. This does not mean, however, that Poeta is denied any and all equitable consideration. The cash and checks that Resnick received from Poeta had value and certainly reduced the extent of Poeta's gains. In the criminal context, this circuit has, on several occasions, acknowledged that even illegal businesses incur legitimate expenses that can be recognized as a matter of law. *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002); *Santos v. United States*, 461 F.3d 886 (7th Cir. 2006), *aff'd* ____ U.S. ____, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (June 2, 2008).

20

## **CONCLUSION**

The government failed to prove that Resnick transferred any of his property to Poeta. Consequently, the judgment should be vacated and the citation dismissed. The fraudulent transfer claim should be dismissed with prejudice and the unjust enrichment claim remanded without prejudice to the government filing a civil complaint against Poeta should it choose to do so. Alternatively, the case should be remanded to the district court for additional proceedings to consider all the evidence and contentions of the parties.

Respectfully submitted,

_____

Eric S. Palles, Attorney for
Respondent-Appellant

**RULE 30(d) CERTIFICATION**

Pursuant to Circuit Rule 30(d), I hereby certify that all material required by Circuit Rule 30(a) and (b) are included in the Appendix to this Brief.

_____
Eric S. Palles, Attorney for Respondent-Appellant

**RULE 32(a)(7)(C) CERTIFICATION**

Pursuant to Circuit Rule 32(a)(7)(C), I hereby certify that this Brief complies with Circuit Rule 32(c)(2)'s type volume limitation.  This Brief is printed in Word Perfect 9.0 and contains 6172 words according to the computer's system for counting words.

_____
Eric S. Palles, Attorney for Respondent-Appellant

**RULE 31(e) CERTIFICATION**

Pursuant to Circuit Rule 31(e), I hereby certify that this Brief was produced by digital media and have served upon each party represented by separate counsel one copy of the text of the brief on a diskette. I further certify that while the brief has been produced in PDF from a word-processing format, the undersigned counsel certifies that the material required in the short appendix is not available in a non-scanned  PDF format.

_____
Eric S. Palles, Attorney for Respondent-Appellant

22

## **Table of Contents for Required Short Appendix**

ITEM A:    Findings of Fact and Conclusions of Law on
the Petition for Relief Against Domenic Poeta

ITEM B:    Court's Order Ruling Denying Motion to
Alter or Amend Judgment Or, Alternatively,
for New Trial

ITEM C:    Transcript of Proceedings, July 23, 2008

ITEM D:    Poeta Trial Exhibit 1

ITEM E:    Poeta Trial Exhibit 5

ITEM F    Excerpts from Government Exhibit D to
Amended Motion for Judgment on the Pleadings

ITEM G:    Poeta Trial Exhibit 10

ITEM A:    Findings of Fact and
           Conclusions of Law on the
           Petition for Relief Against
           Domenic Poeta

ITEM B:     Court's Order Ruling Denying
            Motion to  Alter or Amend
            Judgment Or, Alternatively, for
            New Trial

ITEM C:    Transcript of Proceedings, July 23, 2008

ITEM D:     Poeta Trial Exhibit 1

ITEM E:     Poeta Trial Exhibit 5

ITEM F       Excerpts from Government Exhibit D to
Amended Motion for Judgment on the Pleadings

ITEM G:     Poeta Trial Exhibit 10

## <u>PROOF OF SERVICE</u>

Eric S. Palles, an attorney certifies that he caused two copies of this Brief and a digital copy on CD-R to be served upon

> AUSA Joseph Stewart
> 219 S. Dearborn St., Fifth Floor
> Chicago, IL 60604

by mail from Chicago, Illinois on June 30, 2009 before 5:00 p.m.

_____
Eric S. Palles, Attorney for Appellant