**In the**

# UNITED STATES COURT OF APPEALS
### for the Seventh Circuit

## No. 08-4039

**UNITED STATES OF AMERICA,**

<div align="right">

**Appellee,**

</div>

v.

**ADAM RESNICK,**

<div align="right">

**Defendant,**

</div>

and

**DOMINIC POETA,**

<div align="right">

**Third-party Citation Respondent/Appellant,**

</div>

**On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 9 — Wayne R. Andersen, *Judge*.**

## BRIEF AND APPENDIX OF THE UNITED STATES

| | |
|---|---|
| **STUART D. FULLERTON**<br>**Assistant United States Attorney**<br>**Editor** | **PATRICK J. FITZGERALD**<br>**United States Attorney**<br> **for the Northern District of Illinois** |
| **MICHELE S. SCHROEDER**<br>**Chief, Financial Litigation Section** | **219 South Dearborn Street**<br>**Chicago, Illinois  60604**<br>**(312) 353-5300** |
| **JOSEPH A. STEWART**<br>**Assistant United States Attorney** | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

JURISDICTIONAL STATEMENT   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ARGUMENT   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    I.     The District Court Properly Entered Judgment Against
             Poeta in Supplementary Proceedings on the Government's
             Fraudulent Transfer and Unjust Enrichment Theories . . . . . . . 19

          A.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

          B.     Analysis   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                 1. Fraudulent Transfer Claim . . . . . . . . . . . . . . . . . . . . .  21

                 2. Ownership  Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

                 3. Propriety of Supplementary Proceedings . . . . . . . . . .  27

                     a. Fraudulent transfer claim  . . . . . . . . . . . . . . . . . .  29

                     b. Unjust enrichment claim  . . . . . . . . . . . . . . . . . . .  30

                 4. Due Process Issue  . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

II.     A Crime Victim Has No Duty to Mitigate Damages Nor
        Can a Victim Be Found Contributorily Negligent for its
        Losses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

        A.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

        B.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

III.    The District Court Properly Found That Poeta Was Not
        Entitled to Credits for Money He May Have Paid Resnick
        for Gambling Winnings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

        A.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

        B.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

               1.  Lack of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

               2.  Setoff Is Inappropriate under the Circumstances  .  41

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

# TABLE OF AUTHORITIES

## CASES

*Bordelon v. Chicago School Reform Bd. of Trs.*, 233 F.3d 524
  (7th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 28, 35-37

*Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.*, 276 N.E.2d 89
    (Ill. App. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Canyon Systems Corp.*, 343 B.R. 615 (Bkrtcy. S.D. Ohio 2006) . . . . 22, 23

*In re National Liquidators, Inc.*, 232 B.R. 915 (Bkrtcy. S.D. Ohio,1998) . . . 23

*In re Tubman*, 160 B.R. 964 (Bkrtcy. S.D. Ohio 1993) . . . . . . . . . . . . . . . . . . 23

*Johnson v. McGregor*, 55 Ill. App. 530, 1894 WL 2708 (1894) . . . . . . . . . 41, 42

*Kennedy v. Four Boys Labor Services, Inc.*, 664 N.E.2d 1088
    (Ill. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*King v. Ionization Intern., Inc.*, 825 F.2d 1180 (7th Cir. 1987) . . 20, 35, 39, 40

*Laborers' Pension Fund v. Pavement Maintenance, Inc.*, 542 F.3d 189
    (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*McAllister v. Oberne, Hosick & Co.*, 1891 WL 2143, 42 Ill. App 287
    (1891) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 31

*Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221 (7th Cir. 1993) . . . . 33, 34

*Society of Lloyd's v. Estate of McMurry*, 274 F.3d 1133 (7th Cir. 2001)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 35, 39

*Star Ins. Co. v. Risk Marketing Group Inc.*, 561 F.3d 656
 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*United States v. Berman*, 21 F.3d 753 (7th Cir. 1994) . . . . . . . . . . . . . . . . . 37

*United States v. Kollintzas*, 501 F.3d 796 (7th Cir. 2007) . . . . . . 20, 26, 28, 33

*United States  v. Lilly*, 206 F.3d 756 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . 20

*United States v. Nat'l Bank of Commerce*, 472 U.S. 713 (1985) . . . . . . . . . . . 26

*United States v. Ojeikerei*, 545 F.3d 220 (2d Cir. 2008) . . . . . . . . . . . . . . . . 38

*Vinson v. Casino Queen, Inc.,* 123 F.3d 655(7th Cir. 1997) . . . . . . . . . . . . . . . 32

*Warfield v. Byron*, 436 F.3d 551 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 22

*Zellers v. White*, 70 N.E. 669 (Ill. 1904) . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## STATUTES

18 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-12

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3612(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 39

18 U.S.C. § 3613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3613(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 32, 33

18 U.S.C. §§ 3611-3615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

18 U.S.C. § 3664(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1345 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2072 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

28 U.S.C. § 3304(b)(1)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

720 ILCS 5/28-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

720 ILCS 5/28-7(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

720 ILCS 5/28-7(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

735 ILCA 5/2-1402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

735 ILCS 5/2-1402(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

735 ILCS § 2-1402(c)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

ILCS 5/2-1402(c)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

## RULES

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed.R. Civ.P. 69(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Fed.R.Civ.P. 82 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## JURISDICTIONAL STATEMENT

Appellant's jurisdictional statement is not complete and correct.

This appeal concerns post-conviction proceedings in which the government was enforcing a criminal money judgment pursuant to 18 U.S.C. § 3613 (permitting the government to enforce a criminal fine or restitution order "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law").

The government obtained and served a citation to discover assets directed to Domenic Poeta, an associate of the defendant, Adam Resnick. R. 93, 94. The district court had jurisdiction over the underlying criminal case against Adam Resnick — which among other things established Resnick's criminal restitution liability — under 18 U.S.C. § 3231 (providing "original jurisdiction . . . of all offenses against the laws of the United States"). The district court had jurisdiction over the supplementary proceedings under 28 U.S.C. §§ 1331, 1345 (general federal question jurisdiction and United States as plaintiff) and 18 U.S.C. § 3613 (authorizing the government to enforce criminal restitution orders).

By order entered on September 24, 2008, the district court granted the government's petition for relief and entered a money judgment against the third-party citation respondent, Poeta. R. 155. Poeta filed a timely motion to alter or amend the judgment under Fed. R. Civ. P. 59(e), which the district court

denied by order entered on October 30, 2008.  R. 164.  Poeta then filed a timely

notice of appeal after that order on November 24, 2008.  R. 166.  This court has

jurisdiction because the judgment order Poeta appeals from is a "final decision"

under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.     Whether the district court properly entered judgment against Poeta

on both the government's fraudulent transfer and unjust enrichment claims.

2.     Whether  the district court abused its discretion in denying Poeta's

Rule 59(e) motion to alter or amend the judgment as to issues Poeta could have

but failed to raise prior to judgment.

3.     Whether Poeta was denied due process by having to defend against

the government's fraudulent transfer and unjust enrichment claims in a post-

judgment supplementary proceeding as opposed to an original proceeding.

4.     Whether a crime victim has a duty to mitigate damages or can be

found contributorily negligent for its losses.

5.     Whether the district court erred in finding that Poeta was not

entitled to credits for money he may have paid Resnick for gambling winnings.

## STATEMENT OF THE CASE

**Underlying Criminal Proceedings against Adam Resnick**

Adam Resnick was indicted along with two codefendants in a six-count indictment charging him with a variety of federal offenses arising out of a fraud scheme by which Resnick looted a federally insured bank.  R. 1.[1],[2]  Resnick appeared and pleaded not guilty to the charges.  R. 13.  The defendant later withdrew his plea of not guilty and entered a plea of guilty to count five of the indictment alleging wire fraud.  R. 61, 79 (Order of Judgment and Conviction). The district court sentenced Resnick to 42 months' imprisonment and ordered restitution in the amount of about $10.2 million, of which $9.75 million is owed to the Federal Deposit Insurance Corporation and the balance to individual victims Adam Resnick defrauded and to whom he agreed to make restitution. *Id*.  By an amended judgment, the restitution amount was increased to about $10.4 million.  R. 79.

---

[1]  Citations are denoted as follows: (a) to the record on appeal as "R." followed by the docket entry number; (b) to the Appellant's brief on appeal as "Appl. Br." followed by the page number; to the transcript as "(date) Trans. at" followed by the page; (c) to the Appellant's appendix as "App." followed by the page number; and (d) to the Government's appendix as "Gov't App." followed by the page number and paragraph number of the district court's findings of fact and conclusions of law.

[2] The government will move to supplement the record with two hearing transcripts — January 14, 2008 and September 3, 2008 — that are cited as indicated in note 1.

**Supplementary Proceedings against Poeta**

The government served Dominic Poeta ("Poeta"), an associate of Resnick, with a citation to discover assets.  R. 93, 94.  Pursuant to the citation Poeta appeared with counsel to be examined under oath as to the assets of Adam Resnick.  R. 155; Govt App. 8, ¶20.  At the citation examination, Poeta repeatedly invoked his Fifth Amendment right not to be compelled to give testimony that might tend to incriminate him criminally.  Govt App. 21, ¶21. Thereafter, the government filed a Petition for Relief (R. 99) to which  Poeta answered (R. 110).  Some of the facts were established by the petition and answer and others at trial held before the district court.  Govt App. 2.  The court issued its oral ruling on July 23, 2008, then entered its Findings of Fact and Conclusions of Law on September 24, 2008 granting judgment in favor of the government and against  Poeta in the amount of $647, 211 plus prejudgment interest of $200,986.63 for a total of $848,197.63.  Govt App. 13-14, ¶¶36, 38.

Poeta timely filed a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e), which the district court denied by order entered on October 30, 2008. R. 164.  Poeta timely filed a notice of appeal after that order on November 24, 2008.  R. 166.

## STATEMENT OF FACTS

**Criminal Restitution Judgment against Adam Resnick**

In January 2005, Adam Resnick was indicted along with two codefendants in a six-count indictment charging him with a variety of federal offenses arising out of a fraud scheme by which Resnick looted a federally insured bank.  R. 1; Govt App. 3-4, ¶6.  The indictment alleged that Resnick and his codefendants engaged in a check-kiting scheme by manipulating account balances at Universal Federal Savings Bank, where one of the codefendants worked, and at American National Bank (n/k/a JP Morgan Chase Bank), where Universal had a correspondent account.  Govt App. 3, ¶2.  From about December 2001 to June 2002, the check-kiting scheme allowed Resnick to siphon about $10.2 million from Universal, only a fraction of which was recovered by the government.  *Id*. Resnick gambled away a substantial portion of this money in legal gambling establishments and through use of an illegal bookie. *Id*.  The Federal Deposit Insurance Corporation (FDIC) was forced to take over Universal in June 2002, when Universal collapsed upon discovery of and as the direct result of Resnick's check-kiting scheme.  *Id*.

Pursuant to a written plea agreement with the government, Resnick withdrew his plea of not guilty and entered a plea of guilty to count five of the indictment alleging wire fraud (18 U.S.C. § 1343).  Govt App. 3, ¶3.  The district

5

court sentenced Resnick to 42 months in prison and found him liable for $10.2 million in restitution, of which $9.75 million is owed to the FDIC. Govt App. 3, ¶4. The total restitution amount of $10,234,909 was later amended to be $10,457,825. *Id*.

**Supplementary Proceedings against Poeta**

After entry of the judgment against Resnick, the government served a citation to discover assets on Poeta. Govt App. 8, ¶19. Pursuant to the citation, Poeta appeared with counsel to be examined under oath as to the assets of Adam Resnick. Govt App. 8, ¶ 20. At the citation examination, and throughout the supplementary proceedings, Poeta repeatedly invoked his Fifth Amendment right to not be compelled to give testimony that might tend to incriminate him criminally. Govt App. 8, ¶21.

During the citation exam, the government presented Poeta with copies of 16 checks drawn on a Universal bank account totaling $647,211, made payable to Poeta or to "cash" and negotiated by Poeta, which it contended Resnick had given Poeta in payment of illegal gambling debts. Govt App. 4, ¶¶ 8, 9. When asked about these transactions, Poeta invoked his Fifth Amendment rights. R. 99, Petition, ¶21. When asked if he was in fact a bookie for Adam Resnick, Poeta invoked his Fifth Amendment rights. *Id*. at ¶21(B). When asked if he received the checks totaling $647,211 in payment of illegal gambling debts, Poeta invoked

6

his Fifth Amendment rights. *Id*. at ¶21 (D). Despite his refusal to admit or deny these facts at his citation examination, the government had evidence that established Poeta was in fact Resnick's bookie and in fact received the checks and that they were in payment of Resnick's illegal gambling debts. 6/6/08 Trans. at 21-114 (testimony of Adam Resnick).

**Petition for Relief against Poeta**

The government then filed a Petition for Relief to recover the payments Resnick had made to Poeta. R. 99. The petition alleged that Resnick and his codefendants had taken about $10.2 million from Universal Bank in the check-kiting scheme for which Resnick would later be convicted (*id*. at ¶7); and that Resnick used some of that $10.2 million to pay Poeta for illegal gambling debts.[3] *Id*. at ¶14. The petition alleged the transfers from Resnick to Poeta were not supported by consideration (because an illegal gambling contract provides no value); that Resnick was insolvent and indebted to his victim Universal (and ultimately the Federal Deposit Insurance Corporation who took over Universal); and the transfers to Poeta were thus fraudulent transfers both intentionally fraudulent (Count I) and constructively fraudulent (Count II). *Id*. at pp. 6-7.

---

[3] The government's petition alleged and sought recovery of $891,211 paid to Poeta on 18 checks but it reduced its claim to $647,211 when it moved for judgment. R. 124; R. 125, n. 7. The government withdrew its claim as to two of the 18 checks because it could not prove Poeta received them. *Id*. R. 124, Ex. F (Chizana Aff.), ¶5.q.

7

The district court found that in his answer to the government's petition, Poeta admitted some of the facts; denied without basis many public record based allegations, which the court later deemed admitted; and asserted the Fifth Amendment to all the allegations that were based on the checks Poeta received from Resnick. Govt App. 1, n. 3 and 8, ¶22; R. 125, p. 5.

**Motion for Summary Judgment**

Based on what it regarded as a lack disputed fact created by the petition and answer, the government moved for judgment.  R. 124; R. 125 ("amended motion for judgment").  In addition to the two fraudulent transfer theories alleged in the petition, the amended motion for judgment also advanced an unjust enrichment basis for recovery.  R. 125 at pp. 7-10.

Poeta filed a motion to strike the amended motion for judgment.  Doc. No. 127.  Without formally addressing what the government contended were undisputed facts, Poeta argued that the money transferred to him was never Resnick's and as such was not properly the subject of a fraudulent transfer petition alleging that Resnick was the transferor. *Id.* at 4-5.  He further argued that the government's proof did not show Resnick was insolvent, a necessary element to the fraudulent transfer claims. *Id.* at 5-8.

Poeta also made a number of procedural arguments.  He argued that the government did not file a statement of undisputed facts supporting its motion;

he argued that it was legally improper to construe as non-answers Poeta's assertion of the Fifth Amendment, and then construe the non-answers as admissions to the facts alleged in the petition. *Id*. at 8-9. Poeta argued that the government's unjust enrichment claim was brought beyond the statute of limitations. *Id*. at n. 3. Finally, Poeta renewed his claim that he did not have sufficient discovery from the government to defend the claims against him. *Id*. at 1-2.[4]

**Trial**

To resolve the opposing motions for judgment and to strike, Judge Andersen ordered a trial, which commenced on June 6, 2008 (R. 137; 6/6/08 Trans. at 1-198); Judge Andersen heard closing arguments on June 30, 2008 (R. 180; 6/30/08 Trans. at 1-52)  and July 2, 2008 (R. 183; 07/2/08 Trans. at 53-82); and then gave his oral ruling on July 23, 2008 (R. 184; 07/23/08 Trans. at 1-11). Govt App. 1. The government's case consisted of the testimony of Adam Resnick and the six exhibits attached to its amended motion for judgment. R. 124,

---

[4] Poeta had previously moved for discovery. R. 114. The government produced the documents it would rely upon to prove its claim; it argued that further discovery was unnecessary because Poeta's requests were not relevant to a disputed fact or an affirmative defense he had articulated. 01/14/08 Trans. at 4-5, 12-17; R. 114, Exhibit C. The court then gave the government the opportunity to file a dispositive motion. 01/14/08 Trans. at 18-22. Thereafter, Poeta did not renew his motion for discovery. Poeta subpoenaed for trial several witnesses: Terrence Navarro, Resnick's codefendant (via stipulated testimony); Richard McKinley, formerly a director and Chairman of Universal's Board; Lawrence Elisco, Terrence Navarro's partner; and Maureen Navarro, formerly the President of Universal Bank.

Exhibits A-F.[5]  The district court ultimately found that Poeta negotiated for his own benefit the checks set out in Exhibit F totaling $647,211.  Govt App. 4, ¶8.

Poeta called as witnesses:  Terrence Navarro, Resnick's codefendant; Richard McKinley, formerly a director and Chairman of Universal's Board; Lawrence Elisco, Terrence Navarro's partner; and Maureen Navarro, formerly the President of Universal Bank.  Poeta did not testify.  R. 155, ¶ 16.

In closing arguments, the government argued that there was no dispute that Resnick paid Poeta $647,000 from the money "Resnick stole from Universal Bank, and he needs to give that money back." 6/30/08 Trans. at 3-4.  In response to the court's question, the government allowed that "Resnick did not have legal title to it [the stolen]."  *Id*. at 5.  The court recognized that from that vantage point the money could be returned to Universal as restitution.   *Id*. at 5. The government asserted in the alternative that, based on his status as a signatory to the NEA account (*see infra* n. 6) that "he [Resnick] had sort of a temporary, albeit illegal, ownership of the account."  *Id*. at 8.

---

[5]  Exhibit F to the motion, the Affidavit of Paralegal Specialist Shari Chizana, had attached to it 13 more exhibits, which were primarily multiple copies of the 16 checks Resnick delivered to Poeta and that the United States Attorney's Office had obtained from  the drawee bank (Universal Savings, via its receiver the FDIC) and the corresponding copies obtained from  Poeta's banks where the checks were deposited. R. 124, Exhibits F, ¶3.

Poeta's closing argument focused exclusively on the elements of the government's fraudulent transfer claims and damages. 6/30/08 Trans. at 13-59. One portion of that argument was devoted to the ownership of the NEA account. *Id*. at 28-33. Poeta's contention was that if Resnick did not own the account, or the funds in it, the government could not establish a fraudulent transfer: "the plaintiff must prove that the [fraudulently transferred] property belonged to the debtor." *Id*. at 28. Poeta said nothing about the government's unjust enrichment claim except to note that it was not "pled in the original petition." *Id*. at 14.

**Proposed Findings of Fact and Conclusions of Law**

On July 23, 2008, the district court announced its decision in favor of the government. 06/23/08 Trans. at 1-11. The court requested that the attorney for the government draft the court's findings of fact and conclusions of law, which the defense would have an opportunity to contest on the record. *Id*. at 6; R. 140. The government prepared a draft of the findings of fact and conclusions of law (R. 147-2) and Poeta filed objections. R. 147, 149. The draft findings and conclusions were argued in open court on September 3, 2008. R. 151; 9/3/08 Trans. at 1-98.

Poeta's objections to the draft findings of fact and conclusions of law again focused on the fraudulent transfer claims, but made no objection (relevant to this

11

appeal) to the government's unjust enrichment claim.  R. 147.  Poeta also did not address any objection to proposed finding paragraphs 19-24, which concerned the fact of and legal basis for the citation proceedings against Poeta.  *Id.*  During the in-court hearing to review the proposed findings, Poeta responded "no objection" to each of the proposed finding paragraphs 19 through 24, except to the extent they concerned his client's invocation of the Fifth Amendment during the citation proceedings.  9/3/08 Trans. at 46-52.

In the objections Poeta filed to the proposed findings, he also included his own "Alternative Findings of Fact and Conclusions of Law."  R. 147, pp. 8-18. In his alternate proposed findings, Poeta sought inclusion of the alleged facts that Poeta essentially paid Resnick $70,000, $50,000 and $5,000.  *Id.* at ¶¶ 22-24.    He further sought inclusion of the alleged fact that "Poeta paid him [Resnick] $2.2 million in cash."  *Id.* at ¶8.  In his alternate conclusions of law, Poeta sought inclusion that "[t]he monies that Poeta gave to Resnick(¶¶22-24, *supra*) totalling $125,000" and "substantial cash received by Resnick from Poeta" should be deducted from the government's claim under either the fraudulent transfer claim or the unjust enrichment claim.  *Id.* at ¶¶44-45.

During, the in-court hearing to review the proposed findings, Poeta further argued for inclusion of the alleged $70,000, $50,000, $5,000 and $2.2 million payments as setoffs.  9/3/08 Trans. at 82-88.  The government argued against

12

such findings because there was no evidence of such payments and no evidence that they were intended as offsets. *Id*. at 84-86. The district court's Findings of Fact and Conclusions of Law made no mention of the alleged payments.

Poeta filed Supplemental Conclusions of Law two and a half weeks after his objections were due and just days before the hearing scheduled to review the proposed findings. R. 149. Poeta advanced for the first time two affirmative defenses: "an unjust enrichment claim is denied to a plaintiff whose recklessness caused his claimed injury;" and the "doctrine of mitigation of damages." R. 149. These affirmative defenses were not discussed in connection with any facts established at trial. The affirmative defenses were also not ultimately included in the district court's Findings of Fact and Conclusions of Law.

**Judgment against Poeta**

As found by the court in its Findings of Fact and Conclusions of Law, Poeta operated as a bookie for Resnick from about August 2001 to June 2002, during the period that Resnick was perpetrating his check-kiting scheme. Govt App. pp. 3-4, ¶¶ 6-7; p. 5, ¶10-12; p. 6,¶5. The basis for the government's claim — 16 checks  totaling $647,211 — Resnick gave to Poeta to pay for gambling debts. *Id*. at p. 4, ¶¶8-9, p. 5, ¶12; p. 6,¶15. The money was directly traceable to Resnick's check-kiting scheme. *Id*. at pp. 5-6, ¶¶10, 15. The district court

13

credited Resnick's detailed testimony about his relationship with Poeta, the check kite and how he used the proceeds to fund his gambling with, among others, Poeta. *Id*. at pp. 6-7, ¶¶15, 15a.  Resnick's testimony was never impeached as to the fact that Poeta maintained, without partners, his own book and that Poeta never cashed checks for Resnick. *Id*. at ¶15a.

Poeta never testified but called former Universal officers concerning the legality with which Resnick became a signatory to the account held by Navarro, Elisco and Associates ("NEA")[6] at Universal, the conduit through which Resnick operated his check kite. *Id*. at ¶¶15a, 16.   Poeta also was attempting to call into question Resnick's ownership of the fictional NEA account balances created by the check kite. *Id*. at ¶17.

In deciding to award judgment to the government and against Poeta, the district court found that:

> Here, the crime proceeds are traceable directly into Poeta's possession as there was simply no dispute that the balances in the NEA account, from which Poeta was paid were either fictitious credits Resnick's codefendant's applied to the account; proceeds from other frauds Resnick committed; or gambling "winnings" that were funded by prior withdrawals from the NEA account "balances."

---

[6] Navarro, Elisco & Associates was an accounting firm.  Adam Resnick's co-defendant, Terrence M. Navarro, was one of the  principals of Navarro, Elisco & Associates and he allowed Adam Resnick to have signatory rights to this account. Govt App. 7, ¶15a.

14

*Id.* at ¶25 (footnote omitted). On two of the three theories of relief the government advanced — unjust enrichment and fraudulent transfer[7] — the district court awarded judgment to the government. *Id.* at ¶¶ 25, 26, and 36.

In connection with the unjust enrichment claim, the court premised its holding on Illinois common law which "allows victims of theft to trace and recover their money from a bookie." *Id.* at ¶26 (*citing See McAllister v. Oberne, Hosick & Co.*, 1891 WL 2143, 42 Ill. App 287 (1891)).

In connection with the (constructive) fraudulent transfer theory, the district court held that because the Illinois law regards "the unsanctioned gambling contract between Resnick and Poeta illegal and unenforceable" it could not as a legal matter provide reasonably equivalent value. *Id.* at ¶¶ 31-33. It further found as a matter of fact and law that Resnick's conduct in "fleecing Universal Bank of over $10 million in a matter of months shows an unmistakable intent to incur debts beyond his ability to pay." *Id.* at ¶¶34-35.

The district court declined to specifically decide the ownership issue, ruling that:

---

[7] The government advanced intentionally and constructively fraudulent transfer theories, but the court awarded relief on the latter theory alone. Govt App. 10-11, ¶¶27, 28 and n. 6. Even so, the district court found that the government "clearly and convincingly proved [the] badges of fraud marking a[n] [intentionally] fraudulent transfer, and thus [it] would be an alternate basis for liability against Poeta." *Id.* at n. 6.

15

> [T]he court adopts the reasoning set forth in the United States'
> Motion in Limine (Doc. No. 132).   Poeta was paid from either
> *Universal's* money — in which case the United States can recover on
> a restitution theory— or *Resnick's* money  — in which case the
> United States can recover on a fraudulent transfer theory.  But in
> either case, plumbing the precise ownership of the money used or
> the precise source of the money used would not change the result.

Govt App. 14, ¶ 37 (footnote omitted).  Prior to trial, the government had argued

in its motion that Resnick could be regarded as the legal owner of the NEA

account (R. 132 ¶¶5-7), but that even if it were not the case and recovery

disallowed on a fraudulent transfer theory, it could nonetheless prevail on an

unjust enrichment theory, which had been articulated in its amended motion for

judgment.  R. 125, pp. 7-10.

**Motion to Alter or Amend the Judgment**

After the court's entry of judgment, Poeta moved pursuant to Fed. R. Civ.

P. Rule 59(e) to alter or amend the judgment.  R. 159.  He insisted that the court

had in fact decided Resnick was not the owner when "[i]n its July 28, 2008 oral

ruling . . . [the district court unequivocally found that Resnick had paid Poeta

with money that wasn't his"(*id.* at ¶ 2) yet he also insisted that the court must

make a decision on the ownership issue as it bore on the validity of the

fraudulent transfer claim  (*id.* at ¶ 3-4).  Conceding that the unjust enrichment

claim was supported by a finding that "the transfers to Poeta involved proceeds

16

stolen from Universal" he nonetheless urged the claim was time-barred. *Id.* at 5.

Finally, for the first time, Poeta argued that government's use of post-judgment supplementary proceedings was "not the appropriate vehicle" "[b]ecause the overwhelming evidence was that the monies Poeta received did not belong to Resnick." *Id.* at ¶ 16. Poeta further argued, for the first time, that the use of supplementary proceedings denied him due process (*i.e.*, the ability to "conduct discovery, to implead other parties . . . and to exercise his seventh amendment [sic] right to a trial by jury."). *Id.* After not having raised the affirmative defenses at trial, closing arguments or prior to the court's oral pronouncement of judgment, Poeta again raised the argument that an unjust enrichment claim could be vitiated by Universal's recklessness or failure to mitigate damages. *Id.* at ¶¶ 11-12.

The district court denied the motion to alter or amend the judgment and this appeal followed.

## SUMMARY OF ARGUMENT

The district court correctly found that Poeta was liable on the fraudulent transfer theory and on the unjust enrichment theory. The district court properly found that Resnick had a sufficient legal interest in the funds he transferred to Poeta which would permit the government to employ a fraudulent transfer

17

theory to void the transfer and obtain a judgment against Poeta. Poeta does not contend that the court's findings in this regard were clearly erroneous. As an alternative basis for relief, the district court found Poeta liable on an unjust enrichment theory. Once again, Poeta does not contend the court's findings were clearly erroneous. The court found he had not contradicted the government's evidence that he received $647,211 and gave nothing of legal value in exchange because the illegal gambling business between him and Resnick provided no legal consideration or "reasonably equivalent value" in the parlance of a fraudulent transfer claim.

Poeta first raised the supplementary proceedings argument in his Rule 59(e) motion to alter or amend the judgment. The argument was untimely and properly rejected by the district court. Even if that were not the case, the proceedings were properly brought as post-judgment supplementary proceedings. The district court's adjudication of the government's claims in supplementary proceedings did not deny Poeta due process. Poeta argues that by allowing the case to proceed as a supplementary proceeding, the court prevented him from developing and proving that others might be liable besides him. But Poeta obtained discovery, had a trial, subpoenaed witnesses, argued and lost. He has not identified any prejudice he has suffered from the government's claim being heard in the supplementary proceedings.

18

Poeta contended after the trial that the district court erred in that Universal Bank and others were contributorily negligent for their criminal restitution losses. Untimeliness aside, Poeta's arguments are meritless because they ignore the principle that criminal liability cannot be defeated by the victim's alleged negligence.

Finally, Poeta complains that the district court refused to consider any offset. However, Poeta submitted no evidence below to support his alleged payments to Resnick, and here fails to argue or show that the district court's ruling was clearly erroneous. Moreover, in these circumstances, it would be particularly inequitable for the court to allow Poeta to offset his losses to Resnick.

## ARGUMENT

**I.   The District Court Properly Entered Judgment Against Poeta In Supplementary Proceedings On The Government's Fraudulent Transfer Theory And Unjust Enrichment Theories**.

### A.   Standard of Review

As to a judgment creditor's petition for relief, the final disposition order on questions of law is reviewed *de novo, Society of Lloyd's v. Estate of McMurry*, 274 F.3d 1133, 1135 (7th Cir. 2001), and on questions of fact as clearly

erroneous, *King v. Ionization Intern., Inc.*, 825 F.2d 1180, 1186 (7th Cir. 1987).[8]

In connection with his argument that supplementary proceedings were inappropriate, it was not until after closing arguments, after the entry of judgment and then in his Rule 59(e) motion that Poeta raised the issues of the appropriateness of supplementary proceedings. The district court denied Poeta's Rule 59(e) motion, which Poeta appealed, too. The denial of a Rule 59(e) motion to alter or amend judgment is reviewed under an abuse of discretion standard. *Bordelon v. Chicago School Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir.2000).

## B.    Analysis

Poeta argues that the supplementary proceedings conducted by the district court were "not available and Poeta should have been entitled to a trial, initiated by a complaint and proceeding as a regular civil suit." Appl. Br. 14-15. Poeta claims that this follows from the district court's finding that the money Resnick transferred to Poeta did not belong to Resnick, but rather to Universal. Appl. Br. 10-15. Thus, according to Poeta, the judgment of the district court should be

---

[8] Civil appellate review standards are employed because although occurring in a criminal judgment these proceedings supplemental are regarded as civil in nature. *United States v. Lilly*, 206 F.3d 756, 761 (7th Cir. 2000) ("to determine the character of an appeal, we must look to the 'substance and context' of the underlying proceeding"); *United States v. Kollintzas*, 501 F.3d 796 (7th Cir. 2007) ("district courts may entertain civil garnishment and other collection proceedings as postjudgment remedies within an underlying criminal case").

vacated and the citation dismissed. Appl. Br. 21. Poeta's arguments are meritless, and the district court properly entered judgment against him.

## 1. Fraudulent Transfer Claim

The district court found that Poeta was liable because he had received a fraudulent transfer from Resnick. Govt App. 13-14, ¶36. The elements of a fraudulent transfer are met when it is shown that the debtor —

> makes the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation; [and]

> intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Govt App. 11, ¶28; 28 U.S.C. § 3304(b)(1)(B)(ii).

As to the first element, the district court found that Resnick's transfer of $647,211 to Poeta was made without receiving any reasonably equivalent value in return. Govt App. 12, ¶¶ 29-33. This was because the transfers were made pursuant to an illegal gambling contract. Id at p. 13, ¶33. The district court was indisputably correct on this point: unauthorized gambling in Illinois, such as that between Resnick and his bookie, Poeta, is illegal. 720 ILCS 5/28-1(a). Under Illinois law, any contract made in "consideration" of illegal gambling is "void," 720 ILCS 5/28-7(a), and any person, including any "creditor" may seek to set it aside, 720 ILCS 5/28-7(b).

21

Because Resnick's gambling with Poeta was unauthorized, their bargain is void and unenforceable. As a matter of law Poeta cannot be said to have given Resnick reasonably equivalent value for the $647,211 he paid Poeta. *See e.g., Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006)(for fraudulent transfer purposes, services provided to Ponzi-scheme operators did not give "value").

As to the second element, the district court found Resnick made the transfers to Poeta at a time when he "believed or reasonably should have believed that he would incur debts beyond his ability to pay." App. Br. 34-35. The district court found that Resnick's predominant occupation was "operating fraudulent schemes and gambling" (Govt App. 13, ¶34), and that his income was solely the result of fraud. *Id.* More particularly the district court found that "Resnick's conduct in fleecing Universal Bank of over $10 million in a matter of months and using the money to gamble shows an unmistakable intent to incur debts beyond his ability to pay." *Id.* at ¶35.

Resnick "reasonably should have believed that his increasing indebtedness [due to the check-kiting scheme] shows that he was not going to be able to meet his obligations as they became due. The fact that he spent stolen proceeds to gamble reinforces this conclusion." Govt App. 13, ¶35. Thus, with such pervasive fraudulent activity, the district court "may find as a matter of law that the debtor intended to incur debts beyond its ability to repay." *In re Canyon*

22

*Systems Corp.*, 343 B.R. 615, 650 (Bkrtcy. S.D. Ohio 2006). *See also  In re*

*National Liquidators, Inc.*, 232 B.R. 915, 919 (Bkrtcy. S.D. Ohio,1998) (same);

*In re Tubman*, 160 B.R. 964, 986-87 (Bkrtcy. S.D. Ohio 1993) (same).  These

findings were not clearly erroneous, and Poeta does not contest them at all.

### 2.     Ownership Issue

Poeta's argument centers on a claim that the district court found that

Resnick did *not* own the funds he transferred to Poeta.  Appl. Br. 1.  From that,

Poeta reasons that there can be no fraudulent transfer liability because Resnick

had no interest in the money he transferred to Poeta.  Appl. Br. 15.  But Poeta

creates a contradiction in the court's ruling where one does not and never did

exist.

Poeta bases his "non-ownership" claim on the district court's statement

that "Resnick was using somebody else's money and not getting anything for his

estate" Appl. Br. 10 (*quoting* 07/23/08 Trans. at 3).  However, the district court

made this statement in its oral pronouncement of judgment when discussing

why judgment should be entered against Poeta on the government's unjust

enrichment theory.[9]  In its Findings of Fact, the district court ruled that there

---

[9]  The district court's complete statement was:

The two theories ["under which it believes Mr. Poeta should pay"] were,
one, that because – one is a restitution theory.  *Namely, the money that*

(continued...)

23

were facts that could lead to a conclusion that the account was owned by *either* Universal or Resnick. Govt App. 14,¶37. However, whether the money belonged to Universal or to Resnick, Poeta was liable to the government. *Id*. Despite the clear holding in this regard, Poeta attempts to muddy the waters again when he claims that it was the district court's finding that —

> The evidence indisputably 'supported Poeta's theroy that the money stolen from Universal was not, as a legal matter, Resnick's money.'

Appl. Br. 14 (*quoting* Findings of Fact ¶17). Once again, Poeta only tells half the story. His incomplete quote was from the district court's discussion of *Poeta's* evidence and what it was intended to show.[10] Far from the "evidence

_____

[9](...continued)

*Mr. Resnick used to pay Mr. Poeta was not his money* and, therefore, the money should go back to the valid owners of the money, the bank which was defrauded through the kiting scheme and, I believe, obviously since the bank no longer exists, the FDIC or the U.S. Government, which took over its liabilities.

07/23/08 Trans. at 3 (emphasis supplied).

[10] Here is the complete quote from paragraph 17 (with an emphasis on the portion Poeta quoted) of the district court's findings:

Poeta's witnesses testified about the manner in which Resnick's gained access to the NEA account – which was surely unusual – and how his access to the NEA 'account balances' were not lawful. Such testimony supported Poeta's theory that *the money stolen from Universal was not, as a legal matter, Resnick's money,* and so the government was without standing to recover from Poeta money traceable to Resnick's activity. That legal theory will be addressed below.

24

indisputably" showing Resnick's non-ownership, the district court simply never adopted Poeta's legal argument. We know this because the court understood the legal argument Poeta was making and understood that by adopting it no relief could be granted on the fraudulent transfer theory.

By granting relief on the government's fraudulent transfer theory the court implicitly rejected Poeta's non-ownership argument. Poeta argued in essence that given the illegality with which Resnick gained access to the NEA account, his interest in the account was "void *ab initio*" so he never legally wrote checks to Poeta. Appl. Br . 14. The court also rejected the objections Poeta made to what would become paragraph 37 of the Court's Findings of Fact and Conclusions of Law. The district court concluded that the NEA funds could be regarded as either Universal's or Resnick's. Govt App. 14 ¶37. In his objections, Poeta tried to convince the court that the evidence showed and the court already found just one thing: that the NEA account was not Resnick's money. R. 147, ¶18. However, the court clearly understood that the money in the NEA account could be legally regarded as Universal's *or* Resnick's because it says so in its Conclusions of Law (Govt App. 14, ¶37) and it discussed the idea during closing arguments. 07/2/08 Trans. at 60-63.

To the extent the district court's ruling on the fraudulent transfer theory required a finding that the funds transferred to Poeta "belonged" to Resnick, the

25

district court made that finding, and it was not clearly erroneous. At one point in the proceedings, the district court responded to the statement that Resnick was the *de facto* owner of the NEA account by observing that "it is money he had a lot of power over . . . and under the deposit agreement [with Universal] . . . he had the power to sign his name. And if somebody wanted to honor that power, then money, in fact, would be shifted. And we saw that it was." 07/2/08 Trans. at 61.

Indeed, as the government argued, Resnick's joint ownership in the NEA account established his "unqualified right to withdraw the full amounts on deposit in the joint accounts without notice to his codepositors." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 723 (1985). Because the right to withdraw bears on legal interest and ownership, courts have held that creditors can attach the full account balance of an owner on a joint account. *United States v. Kollintzas*, 501 F.3d 796 (7th Cir. 2007) (because defendant had right to withdraw all of the money at any time without joint account holder's permission, government's lien attached to the full value of the account).

Resnick's "ownership" of the funds stolen from Universal for purposes of recovering them from Poeta did not depend on establishing that Resnick had *good title* to the money. Obviously a thief does not acquire title to stolen property. *Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.*, 276 N.E.2d 89, 92

26

(Ill. App. 1971).  But Resnick had access to and controlled the funds by virtue of his being a signatory to the NEA account.  He could as a practical matter transfer money to Poeta but with regard to Universal, his creditor (by virtue of the money he had stolen in the check kite from Universal), he could not legally transfer funds to Poeta without receiving reasonably equivalent value in exchange, and any such transfer was properly undone as fraudulent.

The unjust enrichment claim was an alternative basis for relief in case Resnick was found to have no ownership of the NEA funds.  The district court's legal conclusion was that *even if* the funds transferred to Poeta did not belong to Resnick, the government was still entitled to recovery; if Poeta were considered to have received Universal's money, he was liable to the government as Resnick's judgment creditor and Universal's successor in interest.  Govt App. 14, ¶37.

### 3.     Propriety of Supplementary Procedures

As stated above, Poeta first raised the supplementary proceedings argument in his Rule 59(e) motion to alter or amend the judgment.  The court clearly did not abuse its discretion in denying that motion because it was clearly untimely and nothing in it demonstrated that Poeta could not have raised the supplementary proceedings argument before judgment was entered. Rule 59(e) motions are not for purposes of bringing arguments that could and should have

27

been brought before judgment. *Bordelon*, 233 F.3d at 529.  The district court properly rejected Poeta's Rule 59(e).[11]

In any event, the argument is spurious.  The fraudulent transfer and unjust enrichment claims were unquestionably proper subjects of a supplementary proceeding.  Like any creditor in federal court, the government may enforce criminal money judgments —— such as that against Resnick — according to the practices and procedures for enforcing civil judgments under state law. 18 U.S.C. § 3613(a). *United States v. Kollintzas*, 501 F.3d 796, 8900-801 (7th Cir. 2007).

> Illinois law provides that a
>
> judgment creditor. . . is entitled to prosecute supplementary proceedings for the purpose of examining the judgment creditor or any other person to discover assets or income of the debtor. . . and of compelling the application of [such] assets or income discovered toward the payment of the amount due under the judgment.

735 ILCS 5/2-1402(a).  It further provides that when assets are discovered, the court "may authorize the judgment creditor to maintain an action against any

---

[11]  Poeta's argument about the appropriate use of supplemental proceedings under Fed.R.Civ.P. 69(a) is a procedural issue not a jurisdictional one.  As this court observed, neither Fed.R.Civ.P. 69(a) nor any other federal rule of procedure "'extend or limit the jurisdiction of the district courts'"). *Laborers' Pension Fund v. Pavement Maintenance, Inc.*, 542 F.3d 189, 193-94 (7th Cir. 2008) (*citing* Fed.R.Civ.P. 82 and 28 U.S.C. § 2072).  Moreover, as demonstrated above, the district court clearly had subject matter jurisdiction at the start of these supplementary proceedings. Thus, "subsequent procedural events [would] not divest the court of that original jurisdiction." *Id*. at 194.

28

person or corporation that, it appears upon proof satisfactory to the court, is indebted to the judgment debtor, for recovery of the debt." 735 ILCS 5/2-1402(c)(6). *Kennedy v. Four Boys Labor Services, Inc.*, 664 N.E.2d 1088, 1091 (Ill. App. 1996) (once discovered the judge may order a third party to deliver up the judgment debtor's assets to satisfy the judgment). The supplementary proceedings statute is to be "liberally construed, as the statute gives courts broad powers to compel the application of discovered assets or income to satisfy a judgment." *Id.* None of the cases interpreting Illinois' supplementary proceedings statute hold that a judgment debtor must have fee simple title to an asset as a prerequisite to a judgment creditor's petition for relief. Rather, it is a right to recover an asset or debt that must be demonstrated, and that was clearly shown below.

### a.    Fraudulent transfer claim

The district court held Poeta liable under a fraudulent transfer theory, which was proper, supported by facts, facts that Poeta has not shown to be clearly erroneous, and was properly the subject of a supplementary proceeding. There was no requirement for the government to bring its fraudulent transfer claim against Poeta as a separate independent action. The fraudulent transfer claim is properly brought in supplementary proceedings as was squarely held in *Star Ins. Co. v. Risk Marketing Group Inc.*, 561 F.3d 656 (7th Cir. 2009) (*citing*

29

*Kennedy v. Four Boys Labor Service, Inc.*, 664 N.E.2d 1088, 1093 (Ill.App. 2 Dist.1996)). *Four Boys* rejected the argument "that an action brought pursuant to the [Illinois] Fraudulent Transfer Act is a separate action which cannot be brought as a supplementary proceeding," reasoning that the action "concerns the *assets of the judgment debtor* and imposes liability based on the value of the [fraudulently] transferred assets." *Id.*

### b.     Unjust enrichment claim

The district court's alternative ruling, holding Poeta liable under an unjust enrichment theory, was also proper, was also supported by facts (facts that Poeta does not contend are erroneous) and was also properly the subject of the supplementary proceeding below. In supplementary proceedings, a judgment creditor can seek to recover a debt any third party owes the judgment debtor. 735 ILCS § 2-1402(c)(6). Resnick had a right to recover his gambling losses from Poeta, and under section 2-1402(c)(6) that is all that is required .

Nothing in the district court's opinion is at odds with Poeta's characterization of the supplementary proceeding as one that is *in rem*. The district court found, on the unjust enrichment claim, that:

> Having received crime proceeds and given nothing in return Poeta is certainly in possession of ill-got gains for which principles of unjust enrichment require the imposition of liability. Here, the crime proceeds are traceable directly into Poeta's possession as there was simply no dispute that the balances in the NEA account,

30

from which Poeta was paid were either fictitious credits Resnick's codefendants applied to the account; proceeds from other frauds Resnick committed; or gambling "winnings" that were funded by prior withdrawals from the NEA account "balances."

Govt App. 9-10, ¶25. Thus, the unjust enrichment claim was a proceeding against Poeta for identifiable property he received. The proceeding was not a claim against Poeta's general assets but limited to the money Resnick stole and transferred to Poeta. Because the money was transferred in consideration of an illegal gambling contract, the district court found that Poeta never acquired a right or title to the funds. Govt App. 10, n.4. Moreover, the district court concluded, Poeta was liable because under Illinois law victims of theft may trace and recover their money from a bookie. Govt App. 10, ¶26. *See McAllister v. Oberne, Hosick & Co.,* 1891 WL 2143, 42 Ill. App. 287 (1891) (employer allowed to recover from winner money employee embezzled and lost gambling). In fact, as the district court recognized, Illinois law:

> authorizes a civil action allowing the gambling "loser" to recover his losses from the "winner," and, if such is not taken within such time, allows any person to bring such an action and to recover three times the proven loss amount from the "winner" §§ 28-8(a) & (b).

31

Govt App. 12, n. 7.[12]   Accordingly, the unjust enrichment  theory was properly

brought in supplementary proceedings and there was a substantial legal basis

for the district court to award relief on that theory.

### 4.    Due Process Issue

Contrary to his argument (Appl. Br. 10-12), adjudicating the fraudulent

transfer and unjust enrichment claims in supplementary proceedings did not

deny Poeta due process.

Title 18, United States Code §§ 3613(a) and (f) provide that:

> The United States may enforce a judgment imposing a fine [or
> restitution] in accordance with the practices and procedures for the
> enforcement of a civil judgment under Federal law or State law.
> Notwithstanding any other Federal law . . . , a judgment imposing
> a fine may be enforced against all property or rights to property of
> the person fined . . .

18 U.S.C. §§ 3613(a) and (f).  Title 18, United States Code § 3664(m) also

provides that "[a]n order of restitution may be enforced by the government in the

manner provided for in [18 U.S.C. §§ 3611-3615]".[13]  Finally, the statute further

---

[12]   This Court has observed that this law, referred to as the "Loss Recovery Act," "was intended to deter illegal gambling by using its recovery provisions as a powerful enforcement mechanism."  *Vinson v. Casino Queen, Inc.*, 123 F.3d 655, 657 (7th Cir. 1997. *See also Zellers v. White*, 70 N.E. 669, 672 (Ill. 1904) (one purpose of the Loss Recovery Act was to prevent gambling and guard against situations where the "loser becomes intent on recovering his losses at the gaming table, and is frequently driven to embezzlement and theft.").

[13]    Restitution, like that imposed in Resnick's case, can be enforced using "procedures for the enforcement of a civil judgment under Federal law or State law."

(continued...)

32

provides that "[t]he Attorney General shall be responsible for collection of an unpaid fine or restitution . . . ."  18 U.S.C. § 3612(c).

Interpreting these provisions, this Court has held that "nothing precludes the government from initiating a collection proceeding under an existing criminal docket number in order to collect a fine or restitution ordered as part of the criminal sentence." *United States v. Kollintzas*, 501 F.3d 796, 800 (7th Cir. 2007).  Accordingly, the district court committed no error either when it allowed the government to enforce Resnick's restitution liability using traditional post-judgment enforcement procedures or when it entered judgment in the Poeta supplementary proceedings.

In *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1225-27 (7th Cir. 1993), the district court entered judgment on a creditor's post-judgment petition. Dismissing respondent's argument that the entry of judgment (essentially a default judgment) violated the rules of civil procedure and her due process rights to a trial, the Court explained that procedures to be followed in supplementary proceedings were left "largely to the judge's discretion":

> But applying every jot and tittle of Illinois procedural law and applying every jot and tittle of federal procedural law are not the only alternatives.  We are dealing with supplementary proceedings;

---

[13](...continued)
18 U.S.C. § 3613(a). The citation to discover assets procedure employed by the government in this case is such a state law remedy.  735 ILCS 5/2-1402.

and while for some purposes, such as appealability, they are fruitfully analogized to regular civil proceedings, the analogy becomes strained when procedure at the trial level is in issue. Proceedings to enforce judgments are meant to be swift, cheap, informal.

994 F.2d at 1226.   Thus, *Ruggiero* concluded "that [the district court] could proceed in any way that satisfied the requirements of due process." *Id.*

Poeta's generalized claims of denial of due process are not nearly as substantial as the respondent in *Ruggiero*. Poeta was afforded a trial, the ability to subpoena witnesses, to cross-examine the government's witness and to challenge its evidence concerning the money Resnick paid him. Poeta tried and failed to contradict the government's evidence that Resnick's payments to him were for illegal gambling or alternatively to show that there was some legal consideration for Resnick's payment to him of the very large sum of $647,211.[14] In short, Poeta has not explained how he was prejudiced by the district court's consideration of the unjust enrichment claim — the only claim he contends was improperly brought in the supplementary proceeding — and he has not explained how the result would have been different in another procedural setting.   And given that lack of explanation, Poeta certainly has not

---

[14]    For example, in cross-examining Resnick, Poeta tried and failed to illicit testimony that Poeta was merely cashing checks for Resnick so the latter could use the cash to gamble elsewhere.  6/6/08 Trans. at 99-106, 102-03.  He also tried and failed to illicit testimony that the money Resnick paid to Poeta was destined for an offshore bookie and Poeta was merely a middleman.  6/6/08 Trans. at 94-99.

34

demonstrated how, if at all, the district court abused its discretion in rejecting Poeta's due process claim set forth in his Rule 59(e) motion to alter or amend the judgment.

## II.    A Crime Victim Has No Duty to Mitigate Damages Nor Can a Victim be Found Contributorily Negligent for its Losses.

### A.    Standard of Review

As to a judgment creditor's turnover motion, the final disposition order on questions of law is reviewed *de novo, Society of Lloyd's,* 274 F.3d at 1135, and on questions of fact for clear error, *King*, 825 F.2d at1186. However, not until the court began drafting the findings of fact and conclusions of law — after closing arguments and after the pronouncement of judgment — did Poeta first raise the issues of mitigation or contributory negligence, and then again in his Rule 59(e) motion to alter or amend the judgment.

Raising the issues in the context of the parties' arguments over the wording of the court's findings of fact and conclusions of law is the procedural equivalent of raising it in a Rule 59(e) motion. The trial was over, closing arguments made and judgment pronounced. Consequently, Poeta's arguments about mitigation or contributory negligence should be regarded as untimely for the same reasons and given the same standard of review — abuse of discretion

— as arguments raised and rejected in a motion to alter or amend the judgment. *Bordelon v. Chicago School Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir.2000).

Poeta appealed the district court's denial of his Rule 59(e) motion where these same arguments were made and rejected. Consequently, the district court's decision to not include these issues in the conclusions of law and the denial of Poeta's Rule 59(e) motion should be reviewed under an abuse of discretion standard. *Bordelon*, 233 F.3d at 529.

## B.    Analysis

Poeta argues that by allowing the case to proceed as a supplementary proceeding, the court prevented him from developing and proving that Universal was responsible for its own losses because of its shoddy procedures and its officers' reckless and grossly negligent conduct in allowing Resnick to operate his check-kiting scheme. Appl. Br. 16-19. Poeta, however, cannot point to any specific ruling of the court because he only objected to the supplementary proceedings *after* the trial was over. That said, he claims the district court erred when it ignored "substantial evidence that [Universal Bank's] conduct contributed to its injury." Appl. Br. 17. He further argues that there were others who "were significantly more instrumental in the demise of Universal Bank than was Poeta." *Id.*

36

These arguments were originally advanced as defenses to the government's unjust enrichment claim.  In closing argument, Poeta attempted to show that Resnick, by the negligence of Universal, gained control, but not legal ownership of the NEA account.  6/30/08 Trans. at 28-33.  After trial, closing arguments and a  month after the district court ruled against him, Poeta sought to use these facts for entirely new arguments of mitigation and contributory negligence.  R. 149 (Poeta's Proposed Supp. Conclusions of Law).  Even at that the arguments were raised in a cursory and undeveloped manner.  (*e.g.*, "unjust enrichment is denied to a plaintiff whose recklessness caused his claimed injury.").

These new, albeit undeveloped, arguments coming after trial, closing arguments and the oral pronouncement of judgment are the functional equivalent of a motion to alter or amend and should similarly be deemed waived The court clearly did not abuse its discretion in not including these matters in its conclusions of law and in denying the Rule 59(e) motion because nothing in it demonstrated that Poeta could not have raised the issues of mitigation or contributory negligence before judgment was entered.  Rule 59(e) motions are not for the purposes of bringing arguments that could and should have been brought before judgment. *Bordelon*, 233 F.3d at 529. .

37

Their untimeliness aside, Poeta's arguments are meritless because they ignore the principle that criminal liability cannot be defeated by the victim's alleged contributory negligence. *United States v. Berman*, 21 F.3d 753, 757-58 (7th Cir. 1994) (a victim's negligence notwithstanding, it is entitled to criminal restitution from a deliberate wrongdoer because contributory negligence is not a defense to fraud); *United States v. Ojeikerei*, 545 F.3d 220, 222-23 (2d Cir. 2008) (victim's participation in scheme and alleged "unclean hands" did not defeat liability where it was the victim's own money that was lost). Nothing in the detailed provisions of the restitution statute contemplates that a defendant guilty of criminal fraud can escape mandatory restitution liability by requiring district courts to conduct mini-trials on the possible contributory negligence of the very persons victimized by the defendant.

Consequently, it is inarguable that *Resnick*'s restitution liability, and the attendant money judgment, can be undermined by his victim's negligence. Once that is established, Poeta's arguments are just illogical. First, *Poeta* is not liable for the collapse of Universal, and any negligence of Universal is irrelevant to Poeta. Poeta's liability stems from his indebtedness to Resnick for money Resnick paid to Poeta for illegal gambling debts. While it was clear the source of Resnick's payments to Poeta was what he siphoned from Universal, that has no relevance to *Poeta's* liability in the supplementary proceedings. Universal's

38

negligence, for argument's sake, could not absolve Poeta of liability as the recipient of a fraudulent transfer or an unjust benefit. Stripped of its legal rhetoric, Poeta's argument is that he can retain his illegal profits because Universal was negligent — an astonishing proposition and one that is not supported by the law.[15]

## III.    The District Court Properly Found That Poeta Was Not Entitled to Credits for Money He May Have Paid Resnick for Gambling Winnings.

### A.    Standard of Review

As to a judgment creditor's turnover motion, the final disposition order on questions of law is reviewed *de novo, Society of Lloyd's*, 274 F.3d at 1135, and on questions of fact for clear error, *King*, 825 F.2d at 1186.

### B.    Analysis

#### 1.    Lack of Evidence

Poeta complains that the district court "refused, for reasons that are not apparent, to consider any offset." Br. 19. However, Poeta submitted no

---

[15] An even broader concern is implicated by giving such an argument any credence. The Attorney General is required to enforce criminal restitution judgments (18 U.S.C. § 3612(c)). Frequently, crime proceeds are dissipated in what are arguably fraudulent transfers and other illegal contracts as in this case. Third party transferees, like Poeta, cannot be allowed to argue the thief had no title and therefore the government has no standing to enforce its judgment. To do so creates a safe harbor allowing criminals to transfer the proceeds of crime to third parties who then thwart the government's attempts to enforce restitution liability by claiming the criminal defendant/judgment debtor lacked good title to the proceeds.

39

competent evidence of credits in the district court. In written objections and oral arguments on the proposed findings of fact and conclusions of law, Poeta made the *same* arguments he makes in his appeal brief. Appl. Br. 19-20. But in rejecting Poeta's proposed findings and conclusions of law as to these alleged payments, the district court implicitly found that Poeta failed to prove the fact of those payments. It does Poeta no good in his appeal brief to merely repeat the arguments. Rather, he must show why the district court's decision is clearly erroneous in not finding that certain payments had been made. *King*, 825 F.2d at 1186. Poeta neither argues the district court clearly erred in its findings as to payments and credits, no does he even attempt to demonstrate as much.

As only one example, Poeta repeatedly stated below and in his appellate brief that "Poeta gave him [Resnick] $2.2 million in cash." Appl. Br. 19. The cited basis for this is hearsay — an excerpt from a book written by Adam Resnick, "Bust" — and the misinterpretation of Resnick's testimony. Poeta cites and attaches an excerpt (misleading by its incompleteness) from the book, which was Exhibit D to the government's Amended Motion. R 125. The full excerpt is very unclear about who is actually paying Resnick, but it is very clear that Poeta is not the one paying Resnick $2.2 million. Poeta then cites an incomplete portion of Resnick's testimony (App. Br. 19 cites only pages 36 and 104-05). In the first complete passage of testimony, Resnick was describing his

40

betting with an "offshore entity" a bookie separate and distinct from Poeta. 6/6/08 Trans. at 35-36. As to this and the alleged $2.2 million, Resnick testified: "And he [Poeta] obviously, wasn't paying that out himself." *Id*. at 36. On his cross-examination of Resnick it is evident that Poeta's counsel understood the distinction between Poeta paying and someone else Poeta may have been associated with paying because he asked Resnick "as a result of your betting with -- *through* Mr. Poeta [you received] $2.2 million?" 6/6/08 Trans. at 104-05 (emphasis supplied). That was the evidence concerning the $2.2 million. There was no evidence that this money came from Poeta.

There is scant documentary evidence of the credits Poeta seeks and no testimony from Resnick or Poeta that the payments related in any way to Resnick's betting with Poeta. This is significant because the district court specifically found that Poeta "maintained his own book, and that testimony was never impeached or contradicted on cross-examination." Gov't App.p 6, ¶15. And it is clear that , for example, the $2.2 million credit Poeta sought was likely from a different bookie, the "offshore" bookie. Given the paucity of evidence Poeta produced, it cannot be said that the court's failure to credit Poeta any of this money was clearly erroneous.

### 2.    Setoff is inappropriate under the circumstances.

41

One very essential element of this case is that the government is recovering illegal gambling losses from Poeta. In these circumstances, the Illinois Supreme Court has held that it is proper to bar the defendant from asserting a claim for his own losses from the plaintiff. *Johnson v. McGregor*, 55 Ill. App. 530, 1894 WL 2708 (1894), *aff'd*, 157 Ill. 350, 352, 41 N.E. 558 (Ill. 1895). Interpreting the prior version of the Loss Recovery Statute, the Illinois Supreme Court held that a plaintiff's recovery was for each time as loser he settled with the winner, "but not the net loss of the whole period before the suit was brought." 157 Ill. at 352. Johnson reasoned that to interpret the statute otherwise would go against its purpose, which "was designed to punish and discourage gambling by making it unprofitable for the winner." *Id.*

*Johnson* suggests yet another reason why setoff is inappropriate in these circumstances. In that case it was the loser's spouse who sued the winner, as the Loss Recovery Act allows. The actual loser, and the one who in theory would be liable for the "winner's" claim of losses, was not a party to the suit. Thus, the setoff claim was not appropriately directed at the spouse, who was not at any game, won no money and could not be held liable under the Loss Recovery Act. *Id.* at 353.

42

## <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that this

Court affirm the judgment order.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

STUART D. FULLERTON
Assistant United States Attorney
Editor

MICHELE S. SCHROEDER
Chief, Financial Litigation Section

_____

JOSEPH A. STEWART
Assistant United States Attorney

43

## **CIRCUIT RULE 31(e) CERTIFICATION**

Pursuant to Circuit Rule 31(e), I hereby certify that I have filed electronically versions of our brief and all available appendix items in nonscanned PDF format.

<div style="text-align:right">

JOSEPH A. STEWART
Assistant United States Attorney

</div>

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

I hereby certify that:

1.  This brief complies with the type volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains 10,011 words.

2.  This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), and Circuit Rule 32(b), because it has been prepared using the WordPerfect X3  proportionally-spaced typeface of Century Schoolbook with 13-point font in the text and 12-point font in the footnotes.

<div style="margin-left: 50%;">

_____
JOSEPH A. STEWART
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois  60604
(312) 469-6008

</div>

Dated:  October 5, 2009

## **CERTIFICATE OF SERVICE**

I, JOSEPH A. STEWART, hereby certify that on October 6, 2009, I caused

two copies and a digital version of the foregoing BRIEF AND APPENDIX OF

THE UNITED STATES,  to be served upon the following by first-class, postage-

paid mail:


Eric S. Palles
Ravitz & Palles
203 North LaSalle Street
Suite 2100
Chicago, IL 60601



 

 

_____
JOSEPH A. STEWART
Assistant United States Attorney
219 South Dearborn Street
Suite 500
Chicago, Illinois 60604