# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

No.  08-4039

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | Appeal from the United |
| | ) | States District Court for |
| vs. | ) | Northern District of |
| | ) | Illinois, Eastern Division |
| ADAM RESNICK | ) | |
| _____ | ) | No.  05 CR 9 |
| | ) | |
| UNITED STATES of AMERICA, | ) | Hon. Wayne R. Andersen, |
| | ) | District Judge, Presiding |
| Petitioner-Appellee. | ) | |
| vs. | ) | |
| | ) | |
| DOMENIC POETA | ) | |
| | ) | |
| Respondent- Appellant | ) | |

## REPLY BRIEF FOR RESPONDENT-APPELLANT

ERIC S. PALLES
Ravitz & Palles, P.C.
203 North LaSalle Street, Suite 2100
Chicago, Illinois  60601
(312) 558-1689

Counsel for Respondent-Appellant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT

    I.       The Government's Failure to Establish a Transfer of the Assets of the Debtor Was Relevant Both to the Substantive Fraudulent Transfer Claim and the Procedural Remedy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.      Substantial Evidence that Universal Bank Contributed to its Own Injury Required a Reduction of its Unjust Enrichment Claim in Whole or in Part . . 8

    III.    Poeta Was Entitled to Credit for Money He Paid to Resnick . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

RULE 32(a)(7)(C) CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

<u>Cases</u>

*AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035 (7th Cir. 1990)  . . . . . . . . .  10

*Baxter v. Palmigiano*, 425 U.S. 308, 47 L. Ed. 2d 810, 96 S. Ct. 1551(1976)  . . . . . . . . . . . . . .  6

*Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890(7th. Cir.1988)  . . . . .  11

*Culligan Rock River Water Conditioning Co. v. Gearhart*, 111 Ill. App. 3d 254, 443 N.E.2d 1065 (1982)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*In re Chomakos*, 69 F.3d 769 (6th Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Horbach v. Kaczmarek*, 288 F.3d 969 (7th Cir. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*HPI Health Care Services, Inc. v. Mt. Vernon Hospital*, Inc., 131 Ill. 2d 145, 545 N.E.2d 672 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Kentuckiana Healthcare v.  Fourth Street Solutions, LLC*, No.4:04-cv-00022-DFH-WGH, 2007 U.S.Dist. LEXIS 25618(S.D. Ind., March 22, 2007) *aff'd* 517 F.3d 446 (7th Cir. 2008)  . . . .  5

*Merrill, Lynch,Pierce, Fenner & Smith, Inc. v. Devon Bank*, 123 F.R.D. 569 (N.D. Ill. 1988)  . .  3

*Pyshos v. Heart-Land Dev. Co.*,  258 Ill. App. 3d 618, 630 N.E.2d 1054 (1994) . . . . . . . . . . . . 3,4

*Santos v. United States*, 461 F.3d 886 (7th Cir. 2006),  *aff'd* ____ U.S. ____, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (June 2, 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Star Ins. Co. v. Risk Marketing Group, Inc.,* 561 F.3d 656 (7th Cir. 2009).  . . . . . . . . . . . . . . . . 3,4

*TRW Title Insurance Co. v. Security Union Title Insurance Co.*, 153 F.3d 822 (7th Cir. 1998) . . . . . . . . .  10

*United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

<u>Statutory Provisions</u>

28 U.S.C. § 3304 (b)(1) (B) (ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

28 U.S.C. §3305(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

720 ILCS 5/28-7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

735 ILCS 5/2-1402(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Rules

Fed R. Civ. P. 54  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed R. Civ. P. 58  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# ARGUMENT

I.    The Government's Failure to Establish a Transfer of the Assets of the Debtor Was Relevant Both to the Substantive Fraudulent Transfer Claim and the Procedural Remedy

The government's contention that its failure to establish that Poeta received property belonging to Resnick, the judgment debtor, is irrelevant to the disposition of its claim against Poeta is simply wrong.  As argued in appellant's initial brief, this failure of proof has both a substantive and procedural dimension: a) an essential element of the government's only pleaded claim under the Federal Debt Collection Procedure Act ("FDCPA") is lacking; and b) the linchpin of the supplementary citation proceeding is absent.  The government's response to these inescapable conclusions, while strenuous, is unconvincing.

First, the government disputes that the district court concluded as a matter of fact that the money was not Resnick's, purporting to cite the district court's "complete statement"on the subject while actually citing a different statement from the previous transcript page. Brief of the United States ("Government Brief") 23-24, n.9. For the sake of completeness, the district court found:

> I believe that they [ the government] proved that and that Mr. Poeta – or Mr. Resnick was using someone else's money and not getting anything in return for his estate . . . .

Dkt. 184, 2-3.

While it is true that the district court was addressing the unjust enrichment claim, he clearly found this fact central to the government's theory of recovery.  He did not treat "the property of the debtor" element in connection with the FDCPA claim nor did he state that

1

this factor was irrelevant to the disposition of the case. Rather the government attempted

*post-hoc* to provide the court "cover" by injecting into its proposed conclusions of law that

resolution of this issue was irrelevant. Dkt. 155, ¶37. This conclusion is erroneous as a matter

of law.

Although the government repeatedly takes Poeta to task for "muddy[ing] the waters"

or "telling half the story" (Government Brief 24), its factual and legal recitations are nothing

if not selective. Thus the government asserts that the elements of the FDCPA claim are met

when the debtor

> makes the transfer . . . without receiving a reasonably equivalent value in
> exchange for the transfer or obligation; [and]
> intended to incur, or believed or reasonably should have believed that he
> would incur, debts beyond his ability to pay as they became due.

Government Brief 21, citing 28 U.S.C. § 3304 (b)(1) (B) (ii). However, the statute also

specifically provides that " A transfer is not made until the debtor has acquired rights in the

asset transferred." 28 U.S.C. §3305(4). It follows, therefore, that since Resnick never

acquired any rights in the money, he could not make a transfer as that term is defined by the

FDCPA.

Similarly, because Resnick did not acquire any rights in the assets transferred, the

supplementary proceedings were an inappropriate vehicle to pursue the claim against Poeta.

The limited purpose of an Illinois supplementary proceeding is "to discover assets or income

of the debtor." 735 ILCS 5/2-1402(a). "The only relevant inquiries in supplementary

proceedings are: (1) whether the judgment debtor is in possession of assets that should be

applied to satisfy the judgment; or (2) whether a third party is holding assets of the

2

judgment debtor that should be applied to satisfy the judgment." *Star Ins. Co. v. Risk Marketing Group, Inc.*, 561 F.3d 656, 660-61 (7th Cir. 2009). "[N]othing in the [Illinois] Code [of Civil Procedure] authorizes the entry of a judgment at a supplementary proceeding against a third party who does not possess assets of the judgment debtor." *Pyshos v. Heart-Land Dev. Co.*, 258 Ill. App. 3d 618, 623, 630 N.E.2d 1054 (1994).

Initially, the government's contention that Poeta's argument that the failure to establish Resnick's property interest is fatal to the supplementary proceedings was untimely must be addressed. The government asserts that Poeta did not raise the issue until his motion to alter or amend the judgment. This is simply untrue. Poeta's counsel raised the issue immediately after the close of evidence, in his closing argument:

> MR . PALLES: . . .I would point out that under the Federal Debt Collection Act, 3305, a transfer is not made until the debtor has acquired rights in the assets. And, you know of course, that the property of the debtor is . . . let's put it this way, the property of the debtor is sine qua non of a citation proceeding ; in other words - -
> THE COURT: Correct. . . .[W]e are not looking for Mr. Poeta's funds.
> MR. PALLES: Correct.
> THE COURT: The claim is that it is - - it really belongs to the judgment debtor.
> MR. PALLES: Precisely.

Dkt. 180, 28-29.

Turning to the merits, the government erects a straw man by arguing that supplementary proceedings are appropriate to pursue a fraudulent transfer claim. Poeta has never suggested otherwise. Both remedies directly concern the assets of the judgment debtor. Failing to prove that the assets belong to Adam Resnick, however, counsels that supplementary proceedings are inappropriate to *this* fraudulent transfer claim. NEA was, at

3

all times the account owner. Appendix Item D; Dkt. 137 ("Tr.") 147.Navarro and Elisco could have stopped Resnick's use at any time. Tr. 115. Resnick was not even a valid or legal signatory. Tr. 129-30. The stranger-than-fiction truth is that Terry Navarro allowed Resnick to use his bank account so that Resnick could launder his gambling and Toni Navarro, as a courtesy to her brother,  facilitated this by disregarding banking regulations because Resnick could not otherwise "clear check systems." Tr. 115.

 The government argues only that Resnick exercised control of the NEA account. It never addresses nor does it claim that Resnick exerted any control over the bank's general funds.  This is significant because the claim against Poeta includes $242,400 in official checks issued by Universal Bank..  All of these were issued by Toni (Tr. 42) at times when, according to her plea agreement, she knew that Resnick was overdrawn by anywhere from $250, 000 to $1,250,000 (compare Dkt. 52, 6-7 with Dkt. 99, Exhibit 1), but before her conduct became criminal. Dkt. 52, 8.  As Toni put it, she floated Resnick an interest-free, unsecured and undocumented loan. *Id.* at 7.  There is simply no basis to claim that these transfers were property of the debtor.

The government's assertion that the unjust enrichment claim is properly the subject of supplementary proceedings notably lacks any citation of authority and, in fact, the case law it cites elsewhere is clearly to the contrary.  In *Star Ins. Co. v. Risk Marketing Group Inc.*, 561 F.3d 656 (7th Cir. 2009), this court held that the district court properly exercised its discretion in refusing to consolidate the judgment creditor's complaint to pierce the corporate veil of the judgment debtor. In contrast to the limited inquiry of the supplementary

4

proceeding, an action to pierce the corporate veil did "not require any allegations that assets of the judgment debtor corporation are in the hands of third-party shareholders or directors." Thus, despite the similarity between the two cases, consolidation of the veil-piercing suit with the supplementary proceedings was improper. *Id.* at 661. See also *Pyshos v. Heart-Land Dev. Co.*, 258 Ill. App. 3d 618, 624, 630 N.E.2d 1054 (1994) ("a party who has secured a judgment against a corporation may not seek to pierce the corporate veil in supplementary proceedings.")

An unjust enrichment claim does not require the government to prove that Poeta is holding assets of the judgment debtor that should be applied to satisfy the judgment, merely that it has a better claim to the benefit than he. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 162, 545 N.E.2d 672 (1989). Indeed, the government concedes, "The unjust enrichment claim was an alternative basis for relief in case Resnick was found to have no ownership of the NEA funds."Government Brief 27. An unjust enrichment claim is therefore not the appropriate subject of a supplementary proceeding.

The government makes the spurious claim that the unjust enrichment claim is an action *in rem* : that "the unjust enrichment claim was a proceeding against Poeta for identifiable property he received . . . not a claim against Poeta's general assets but limited to the money Resnick stole." Government Brief 31.  This is absurd.  Rather, money is a peculiar sort of property that is both fungible and intangible. *Kentuckiana Healthcare v.  Fourth Street Solutions, LLC*,  No. 4:04-cv-00022-DFH-WGH,  2007 U.S. Dist. LEXIS 25618 (S.D. Ind., March 22, 2007) *aff'd* 517 F.3d 446 ( 7th Cir. 2008) (granting summary judgment on

conversion claim in the absence of proof concerning a specific fund of money); see also *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (affirming dismissal of conversion claim where there was no specific, segregated fund or specific coins or bills at issue). The government's position is also belied by the fact that the district court ordered that "judgment is . . .entered in favor of the United States and against Dominic Poeta a/k/a Domenic Poeta in the amount of $647,211 plus prejudgment interest in the amount of $200,986.63," not "Domenic Poeta is directed to turn over assets in the amount of X currently in his possession." Finally, it should be noted that, subsequent to the entry of judgment, the government requested and obtained abstracts of judgment in order to place liens on three pieces of real estate belonging to Poeta. Dkt. 158. If, in fact, the government does not claim against Poeta's general assets, this cloud on his title is completely unjustified and the government should be ordered to remove the liens.

The government's bottom line on the propriety of supplementary proceedings seems to be, "What difference does it make?" After all, "[l]ike any creditor in federal court, the government may enforce criminal money judgments — such as that against Resnick — according to the practices and procedures for enforcing civil judgments under state law." Government Brief 28. Except, that the government is the *only* creditor that can enforce a criminal money judgment. Also unique, and pertinent here, is the government's power to prosecute. "In a civil suit involving only private parties, no party brings to the battle the awesome powers of the government." *Baxter v. Palmigiano*, 425 U.S. 308, 335 47 L. Ed. 2d 810, 96 S. Ct. 1551(1976) (Brennan, J. concurring in part and dissenting in part). This

6

certainly informs the decision whether to assert a fifth amendment privilege to a question such as "Are you, in fact a bookie?" See Government Brief 6.

The fundamental unfairness of these proceedings was compounded by the fact that, despite the government's assertion to the contrary, there was no discovery. Information concerning critical elements of the case, including Resnick's intent and his financial condition at the time of each transfer, were not available to Poeta. Each of the witnesses who testified gave statements to the FBI and the three defendants gave proffers, the substance of which is not public because the defendants pleaded guilty. Production of these documents was requested and would have imposed a minimal burden on the government. Without having received this material, a specific recital of the prejudice engendered by its absence is necessarily speculative except to state the obvious: the evidence against Poeta came exclusively from Adam Resnick, an acknowledged scam artist who, in the government's version, "spoke knowledgeably and candidly" about these events; his statements and proffer would have provided Poeta with a vital tool to impeach him.

Nor did Poeta receive a "trial" in any real sense. The district court conducted a truncated evidentiary hearing in connection with the government's motion for judgment on the pleadings. Poeta had no opportunity, for example, to implead Terry Navarro and Larry Elisco, the principal facilitators of the bank fraud, for contribution. More fundamentally, Poeta was denied his right to have his case tried to a jury. All of these factors denied Poeta due process of law.

7

II.     <u>Substantial Evidence that Universal Bank Contributed to its Own Injury</u>
<u>Required a Reduction of its Unjust Enrichment Claim in Whole or in Part</u>

The substantial evidence that the Universal Bank contributed to its own injury required a reduction, in whole or in part, of the damages payable to the government, which stands in the shoes of the bank under the unjust enrichment theory. The government's contrary argument is misguided on several levels.

It begins with the completely misleading statement that Poeta did not propose legal conclusions concerning mitigation and the bank's conduct "until the court began drafting the findings of fact and conclusions of law." The fact is that the *court* never drafted findings or conclusions of law; the assistant United States Attorney who authored the government's appellate brief did. Compare Dkt. 155 with Dkt. 147, Ex.A. It next asserts (without citation) that Poeta's alternative proposal must be treated as a Rule 59(e) motion because the judge had already orally declared the government the winner. However, a judgment is not final until it is entered in writing. Fed. R. Civ. P. 58(c). Until then, it is subject to revision at any time. *Cf.* Fed. R. Civ.P. 54(b). Thus, the argument lacks merit.

Again without citation, the government claims that the bank had no duty to mitigate its losses. On the contrary, the doctrine of mitigation of damages applies in virtually every type of case in which recovery of a money judgment or award is authorized. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Devon Bank*, 123 F.R.D. 569, 572-73 (N.D. Ill. 1988); *Culligan Rock River Water Conditioning Co. v. Gearhart*, 111 Ill. App. 3d 254, 258, 443 N.E.2d 1065 (1982).

Finally, the government's central point, that liability for criminal restitution cannot be defeated by a victim's contributory negligence, is really beside the point. Poeta is not a criminal defendant, hence not criminally liable for restitution, and the bank's conduct transcends simple negligence, bordering on intentionality.  The criminal restitution cases that the government cites are therefore inapposite. While the genesis of the supplementary proceeding arose from enforcement of a criminal fine against Resnick, the claims against Poeta are strictly civil.  Moreover, neither the fraudulent transfer claim nor the unjust enrichment claim were premised on any wrongdoing on Poeta's part.

On the other hand, the bank, through Toni Navarro, when told that Resnick " would not clear check systems" disregarded banking regulations to enable his access to her brother's account, taught him how to kite checks and gave him access to the bank's correspondent account to do so, and covered in excess of $1,000,000 in his NSF checks, beginning almost six months before the bank collapsed. Tr. 41, 43-44, 128-30; Dkt  52, 6-7.  The government itself characterized this conduct "as reckless and grossly negligent." Dkt. 52, 8. That characterization is charitable. Recklessness and wilful ignorance fairly describes Maureen Navarro's conduct during that same period.  She was the bank's chief executive officer, chief security officer and chief compliance officer She knew that Resnick had access to the correspondent account, a privilege extended to him alone among the bank's "customers" as a courtesy to her son, Terry. Tr. 181.  She  turned a blind eye when Resnick cycled $200,000,000 through the bank, an amount that dwarfed the sum total of all the bank's remaining assets and should have triggered suspicious activity reports to regulators. Tr. 132-

9

33, 185.  Taken all together the evidence establishes that the Navarro family treated Universal Bank as a fiefdom governed by hereditary privilege.

An unjust enrichment claim is denied to a plaintiff whose own recklessness caused his claimed injury.  *TRW Title Insurance Co. v. Security Union Title Insurance Co.*, 153 F.3d 822, 829 (7th Cir. 1998); see *AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1041-42 (7th Cir. 1990) (the victim of a deliberate fraud is barred from recovery if he engages in deliberate or reckless risk-taking).  Evidence of the bank's recklessness was manifest.

The government's final argument is peculiar: that Poeta cannot interpose the bank's conduct as a defense because he had nothing to do with its collapse.  The underlying premise seems to be that Poeta's liability derives from his indebtedness to Resnick.  However, under the government's theory, adopted by the district court, this would pertain only to the fraudulent transfer theory. In the unjust enrichment theory, the government stands in the shoes of the bank. Dkt. 155, ¶37. Under this equitable theory, the fact that Poeta had nothing to do with the bank's collapse while the bank had everything to do with it militates in favor of a bar to liability or reduction in damages.

III.    Poeta Was Entitled to Credit for Money He Paid to Resnick

The government's argument to the contrary is a) there was no evidence to support payments by Poeta to Resnick; and, b) Poeta is undeserving.  As to the lack of evidence, the government selectively focuses only on one payment in the amount of $2.2 million and does not even contest that the payment was made.  Rather, the government points to evidence that the money was not Poeta's but came through an offshore entity that Poeta set up for

10

Resnick , although Resnick still paid and collected through him. Tr. 35-36. One wonders if, in the government's view Resnick's ownership of the assets he transferred to Poeta are irrelevant to the merits of its claim, then under what principle does the ownership of Poeta's contemporaneous transfer to Resnick become dispositive? The apparent answer is a result-oriented one: the government always wins. Even so, the argument proves too much. Characterizing Poeta as a fiscal intermediary defeats his liability to the government. See *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th. Cir.1988) (intermediary who holds check only for the purpose of fulfilling an instruction to make the funds available to someone else is not liable under fraudulent conveyance law).

The remaining payments for which Poeta seeks credit are inconvenient truths that the government chooses to ignore. Evidence of the largest, $70,000, comes directly from the government. In making a claim against Zurich North America, the bank's director-and-officer insurance carrier, counsel for the FDIC recites that a cashier's check payable to "D. Poeta" was credited to the NEA account. Poeta Exhibit 5 (Appendix Item E) 4. Resnick does not dispute that he received it. Tr. 88. Resnick also acknowledged receiving at least $50,000 from Poeta on another occasion and giving it to Toni Navarro for deposit in the NEA account. Tr. 103-04. This evidence was also uncontroverted.

The government contends that, by refusing to make any findings, the court "implicitly found that Poeta failed to prove the fact of these payments" and that this finding is not clearly erroneous. This is inaccurate, both legally and factually. The district court explicitly told the parties, "[I]f I do not include them in the Court's findings of fact or conclusions of

11

law, it doesn't necessarily mean I disbelieve every item stated in there. . . .[W]e want to draw the line somewhere at what is relevant." Transcript of Proceedings September 3, 2008  45. Relevancy is a legal determination reviewed *de novo*.

Finally, the government says that Poeta is not entitled to any setoff because he engaged in illegal gambling, relying on a nineteenth-century case involving an Illinois statutory claim with questionable relevance. We currently live in an age where daily sports pages routinely publish point spreads on football and baseball games.  Office pools abound. It would not be inconceivable that, during the NCAA basketball tournament, one or more operate out of the building where this Court sits.  Betting on sporting events, while illegal, does not subject its participants to obloquy.  Therefore, while an illegal gambling contract is void and unenforceable, §720 ILCS 5/28-7, this does not mean that Poeta stands stripped of his ability to raise equitable defenses to the government's claim.

Two cases of this Court, *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002) and *Santos v. United States*, 461 F.3d 886 (7th Cir. 2006), *aff'd* _____ U.S. _____, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (June 2, 2008) are analogous.  In each, this Court noted that gambling is a crime that entails voluntary, business-like operations and that no business can be carried on without expenses.  Applying the rule of lenity, this Court interpreted "proceeds" under the money-laundering statute to mean net income rather than gross receipts. Equitable considerations suggest the same result in the instant case.

Of course, money lost to a casino is not a fraudulent transfer. A bet provides equivalent value. *In re Chomakos*, 69 F.3d 769, 770-772 (6th Cir. 1995). Equally true, an illegal

12

bet does not. Nonetheless, this does not preclude Poeta from the appropriate credits. He is not claiming that he gave Resnick an opportunity to place a bet; he gave him money. Money has value.  These transfers cannot, in justice and equity, be ignored.

IV.     <u>Conclusion</u>

For the foregoing reasons, the judgment should be vacated and the citation dismissed. The fraudulent transfer claim should be dismissed with prejudice and the unjust enrichment claim remanded without prejudice to the government filing a civil complaint against Poeta should it choose to do so. Alternatively, the Court should vacate and modify the judgment to reduce it by $362,400, reflecting the $242,400 received by Poeta in cashier's checks and $120,000 in payments made into the NEA account. As a final alternative, the case should be remanded to the district court for additional proceedings to consider all  the evidence and contentions of the parties.

Respectfully submitted,

_____
Eric S. Palles, Attorney for
Respondent-Appellant

## <u>RULE 32(a)(7)(C) CERTIFICATION</u>

Pursuant to Circuit Rule 32(a)(7)(C), I hereby certify that this Reply Brief complies with Circuit Rule 32(c)(2)'s type volume limitation.  This Brief is printed in Word Perfect 9.0 and contains 4081 words according to the computer's system for counting words.

_____
Eric S. Palles, Attorney for Respondent-Appellant

## <u>CERTIFICATE OF SERVICE</u>

I, ERIC S. PALLES, hereby certify that on October 19, 2009, I caused two copies and a digital version of the foregoing REPLY BRIEF OF RESPONDENT-APPELLANT, to be served upon the following by first-class, postage paid mail:

> Joseph A. Stewart
> Assistant United States Attorney
> 219 South Dearborn Street
> Suite 500
> Chicago, Illinois 60604

_____
Eric S. Palles, Attorney for Respondent-Appellant

14